BLANCHE SCOTT, Administratrix, Appellee, v. J. O'LEARY, Appellant.

**Appeal:** SPECIAL FINDINGS: CONCLUSIVENESS. The appellate court will not disturb the finding, in answer to a special interrogatory, which has support in the evidence.

**Evidence:** MATTERS OF FACT AND NOT OPINION. A witness who was at the scene of the collision of an automobile with a horse and assisted in extricating the horse, was competent to state that the machine was in gear and that the brakes were not set, over the objection that the inquiry called for an opinion and not a fact.

**Same:** NONEXPERT EVIDENCE: MATTERS OF OBSERVATION. A nonexpert witness is competent to testify to the appearance and actions of one who has suffered a personal injury, when confined to his own observations.

**Contributory negligence:** EVIDENCE: HABITS. Where there were no eyewitnesses to an accident, a general habit of the injured party,

relative to his claimed negligence at the time of the injury, may be shown, as bearing on his exercise of care in that respect. Thus where it was claimed that decedent was asleep in his carriage when injured by collision with an automobile, it was competent to show his habit of sleeping when driving.

**Admission of evidence:** HARMLESS ERROR. In this action for injuries to decedent by collision of his horse and carriage with an auto- mobile, evidence of the admissions of decedent with reference to his conduct with another horse and carriage, more than a year previous, was not reversible error, even if erroneously admitted.

**Evidence:** TRANSACTIONS WITH A DECEDENT. The testimony of the mother of deceased that she had given him his time, that he worked for himself, collected his own wages, owned property and conducted his own business, was neither objectionable as incom- petent, nor as relating to a personal transaction.

**Highways:** NEGLIGENT SPEED OF AUTOMOBILE: INSTRUCTIONS. An in- struction following the language of the statute, that one operating an automobile at an average speed of more than twenty miles per hour is prima facie guilty of negligence, was not erroneous, although the language may be somewhat obscure.

**Same:** OPERATION OF AUTOMOBILES: CARE. The driver of an automo- bile is bound to know that people are likely to be traveling the high- way at all seasons of the year, and all times of day and night, and he has no right to expect a free and unobstructed driveway.

**Emancipation of minor:** EVIDENCE: SUFFICIENCY: WAIVER: INSTRUC- TION. Even if the testimony of a brother of decedent that de- cedent, a minor, had been living in his family, attending to his own business and drawing his own wages, was not sufficient to show his emancipation, the mother's evidence that he had been emanci- pated was sufficient, in the absence of an objection on the trial that she was not the proper person to emancipate him; and as such objection was not made prior to submission of the appeal, it was waived, and failure to show that the father was not living was not material.

**Damages:** INSTRUCTION: PRESUMPTION. Where there was no evi- dence that decedent's harness was injured in a collision of his horse with an automobile, and no evidence of its value, it will be presumed that the jury followed the instruction of the court, direct- ing them to allow damage to the harness only in the event damage was proven; and it will also be presumed that no damage was allowed on that account, but if any damage was allowed on that account it must have been small, and no reversal should be ordered.

*Appeal from Johnson District Court.—*Hon. R. P. Howell, Judge.

Saturday, November 16, 1912.

Action to recover damages for injuries sustained by plaintiff's intestate, and damages done to his property as a result of an automobile collision. Defendant filed a general denial, and upon the issues joined the cause was tried to a jury, resulting in a verdict for the plaintiff in the sum of $550, upon which judgment was rendered, and defendant appeals.—*Affirmed.*

*Wade, Dutcher & Davis,* for appellant.

*Edwin B. Wilson* and *Ranck & Bradley,* for appellee.

Deemer, J.—This action was brought by Clyde Scott, a minor, during his lifetime, in the name of George Scott, his next friend. During its pendency, but before trial, Clyde Scott died, and plaintiff, Blanche Scott, the administratrix of his estate, was substituted as plaintiff. It is not claimed that Clyde Scott died as a result of his injuries; but it is averred that he suffered personal injuries, was at expense for medical treatment, that he lost time, and that his horse was killed and his buggy and harness injured. In speaking of the plaintiff, we shall, unless otherwise stated, refer to Clyde Scott.

It is averred in the petition that plaintiff, while driving a single horse hitched to a top buggy, along a public highway in Johnson county, Iowa, known as the lower Muscatine road, traveling in a southeasterly direction, met the defendant, who was coming from an opposite direction in a large high-powered automobile at an excessive, unlawful and unreasonable rate of speed, with the lights of his car in an imperfect condition, and that he (defendant) reck-

lessly and carelessly and without looking to see if there was any one in the road, and without using any care or caution, drove his automobile directly into plaintiff's horse and vehicle, killing the horse, injuring the buggy and harness, and throwing him (plaintiff) to the ground, serously injuring him. He further pleaded that defendant did not turn out or give him any part of the highway, and that he might have avoided plaintiff had he been so minded; but on account of not paying attention to where he was going, the defective condition of his lights, and the high rate of speed, the collision occurred. Plaintiff introduced testimony in support of all of these issues, and it is not seriously contended that the verdict is without support. The points relied upon for reversal have reference to rulings made on the admission and rejection of testimony, to the instructions given, and to the proposition that deceased was, as a matter of law, guilty of contributory negligence.

I.   Without setting forth the testimony, it is sufficient to say that the question of contributory negligence was for a jury.  For defendant it is contended that deceased was

1. APPEAL: special findings: conclusiveness.

asleep at the time of the collision, but the jury in answer to a special interrogatory found this was not true, and, as this finding has support in the testimony, we should not interfere.

II.   A witness for the plaintiff, who went to the scene of the collision, and who assisted in pulling the automobile off the horse, was permitted to testify, over objections that

2. EVIDENCE: matters of fact and not opinion.

he was incompetent, and that the inquiry called for an opinion and not a fact, that the machine was in gear, and that the brakes were not set.  Surely these statements were of facts, and no expert knowledge was required to determine the matter.

III.   The following extract from the record presents the next ruling complained of:  "Q. What condition was he in when he came out of the hospital?  Describe to the jury from what you saw what condition he was in.  A.

Well, he had cuts and burns on his face; he had no use of

his head and neck and the right arm. (De-

**3. Same: non-expert evidence: matters of observation.** fendant moves to strike out the statement that he had no use of his head and neck and right arm as a statement of the conclusion of witness and incompetent; the witness is not competent to testify on that subject. Overruled; exception saved.) Q. Now, explain to the jury. Describe what you mean by not having use of his head, neck, arm, and shoulders. A. Whenever he went to turn his head like any person would, he would have to turn his whole body; he had no use of his neck, or couldn't turn his head like any one else. (Defendant moves to strike out the answer for the same reason—statement of a conclusion as to what he could do or could not do. Overruled as to the whole answer if the motion includes the whole; exception saved.) Q. How long did he remain in the condition that you have described? (Same objection for the same reasons and asking for the opinion of the witness. Overruled; exception saved.) A. Why, he remained that way some seven weeks like that when he got so he could do little things around." The witness giving this testimony was not an expert; but we think his testimony was competent, for he really described nothing more than he saw. That such testimony is competent, see *Rheininghaus v. Association,* 116 Iowa, 364; *Stone v. Moore,* 83 Iowa, 186; *Kostelecky v. Scherhart,* 99 Iowa, 120; *Bailey v. Centerville,* 108 Iowa, 20; *State v. Shelton,* 64 Iowa, 333.

Testimony regarding buggy and automobile tracks near the scene of the accident, was objected to as calling for the conclusion of the. witness. Manifestly these objections are untenable.

A witness was asked if he knew of the habits of the deceased as to his sleeping while driving upon the public highway, and another as to certain statements made by Clyde Scott during his lifetime, in which he stated that he

was in the habit of going to sleep while driving on the high-

**4. CONTRIBUTORY NEGLIGENCE: evidence: habits.** way. All this testimony was excluded, and of this complaint is made. In this connection it should be stated that defendant claimed Scott was asleep at the time of the collision. Where there are no eyewitnesses of a transaction, it has been held that testimony as to the habits of one whose conduct is in question, may be shown as bearing upon his care or the want of it. *Frederickson v. Railroad Co.,* 156 Iowa, 26. See, also, *Dalton v. Railroad Co.,* 114 Iowa, 259; *Gray v. Railroad Co.,* 143 Iowa, 268; *Hall v. Rankin,* 87 Iowa, 261; *Stone v. Hawkeye Ins. Co.,* 68 Iowa, 737. But the testimony must relate to his general habits and not to particular instances. The general rule in civil cases is that good character, or the reverse, can not be shown in negligence cases. Wigmore on Evidence, sections 64, 65, and cases cited.

In the instant case there were eye witnesses of the transaction, and defendant was permitted to introduce certain admissions said to have been made by plaintiff's intestate regarding the transaction. Under the

**5. ADMISSION OF EVIDENCE: harmless error.** rules previously announced by us, there was no error in the rulings, and in any event no prejudice. Answers to the questions necessarily would have involved Scott's conduct with reference to another horse and vehicle, and in one instance, at a time a year or more prior to the accident. The testimony, even if admissible, was so inconsequential in character that we would not be justified in reversing the case. Under the testimony, the jury might very well have found for plaintiff, although he was asleep at the time of the collision.

Mrs. Kate Scott, Clyde's mother, was called as a witness and permitted to testify, over objection, that deceased

**6. EVIDENCE: transactions with a decedent.** was her son, and that she had given him his time and permitted him to work for himself; that he collected his own wages, attended to his own business affairs, and owned property in his own

name. The only specific objection was that the question
eliciting this information called for a personal transaction
with one deceased; that the witness was incompetent; and
that the statement would be a conclusion of the witness.
There was also a general objection that the testimony was
incompetent. None of these objections were tenable. This
testimony will be considered again when dealing with the
instructions.

It should also be stated that the son Clyde, was married
on November 16, 1910, which was something like three
months after the accident. These are all the rulings on
the testimony which need be considered.

IV.  The trial court gave the following instructions:

You are instructed that it is the law of this state that
no person shall operate an automobile on a public high-
way at a rate of speed greater than is reasonable and
7. HIGHWAYS:       proper, having regard to the traffic and use
negligent speed   of the highway, or so as to endanger the life
of automobile:
instruction.       or limb of any person, and not at a greater
average rate than twenty miles per hour. You are in-
structed that the statute expressly authorizes the use of
automobiles on the highway and confers on the operators
of such vehicles the same rights in the road as are accorded
to the drivers of other vehicles, and you are instructed that
if the defendant operated his automobile with such care as
an ordinary cautious and prudent man would use under
like circumstances, having a regard for the use of the road
at the time by others (he being bound to know that people
were likely to be traveling upon the same), and using reason-
able and ordinary care under all of the circumstances, there
can be no recovery, and you are instructed that, while a
party operating an automobile at an average speed of more
than twenty miles per hour is *prima facie* guilty of negli-
gence, yet this may be overcome by evidence of the facts
and circumstances surrounding the case as stated above. All
that is required is that he should use such care as an ordi-
narily cautious and prudent person would use under like
circumstances, having a regard for the use of the road at
the time by others, and, if he did so, he would not be
guilty of negligence.

This is complained of because of the use of the phrase "operating an automobile at an average speed of more than twenty miles per hour is *prima facie* guilty of negligence." The words in parenthesis are also complained of. The instruction, in so far as it relates to speed, was in the language of the statute. Code Supp. section 1571-h. And we see no error in repeating that language although it may be a little obscure. Defendant admitted, while on the stand, that he was running his automobile, at the time of the accident, at the rate of thirty miles per hour, and he also admitted that fact to others. Of course it may be difficult to determine whether or no one is operating an automobile at an average speed of more than twenty miles per hour, without knowing the distance traveled, and time occupied, but that is no reason for withholding a statement of the law as written. It would seem that a "joker" was introduced into this section of the statute, and that it might be well for the Legislature to remedy the matter. If the jury should have thought the court intended to charge that a rate of speed of more than twenty miles an hour was *prima facie* evidence of negligence, still we would not be disposed to reverse the judgment, for, under the circumstances disclosed by this record, we should say that such a rate of speed was *prima facie* evidence of negligence. But this is not what the instruction said.

As to the part of the instruction in parenthesis, we think it is correct, and here copy from a case in Wisconsin the following: "The driver of every automobile on a country road knows that live stock roam about the roads unattended; that travelers on foot, on horseback, and in various kinds of vehicles are found using the highways at all seasons of the year and all times of the day and night; such a driver has no right to expect, and does not expect, a free and unobstructed driveway over a well-defined track, as does the engineer of a locomotive, or even the motorman

8. SAME: operation of automobiles: care.

of an electric car. The automobile has created a new peril in the use of our public highways—a peril that unfortunately has been greatly enhanced by the recklessness of the operators who propel the machines with the speed of railway trains along crowded thoroughfares. Some rule, commensurate with the public safety, and not unduly harsh or restrictive upon the users of motor cars, must be evolved to meet a situation which has recently arisen." *Lauson v. Fond du Lac,* 141 Wis. 57 (123 N. W. 629, 135 Am. St. Rep. 30.) This, it seems to us, is a sound principle of law, and we here adopt it as a proper rule for this state.

V. Instruction No. 12 reads as follows: "It being admitted that the deceased, Clyde Scott, was but nineteen years of age at the time of the claimed injury, you are in-

9. EMANCIPATION OF MINOR: evidence: sufficiency: waiver: instruction.

structed that, if you have found that plaintiff is entitled to recover in this action, she would not be entitled to anything for loss of earnings from the time of the accident or injury, if any, until the date of his marriage, for during that time his earnings in law belonged to his parents, unless the plaintiff has shown you that, prior to the time of the claimed injury, deceased had been given his time by his parents—that is, he had been allowed to work and collect his wages and keep them for his own use without accounting to his parents for the same." This instruction is challenged because there was no testimony as to emancipation. This is bottomed upon the thought that there was no showing that his father was dead; hence the mother's testimony hitherto recited was not sufficient to show emancipation. There was testimony from Clyde's brother that he (Clyde) had been living in his family, attending to his own business and drawing his own wages; and, while there was no testimony that his father was dead, this is the fair import of the evidence. But if this were not true, no such objection was made to the mother's testimony, and the fair inference from the objection made to her testimony is that

she was the proper person to emancipate her son. Had the objection been made that she was not the proper person to emancipate him, the matter might easily have been cured. As this was not the objection, the defect was cured. *Kubic v. Zemke,* 105 Iowa, 271, sustains the action of the trial court.

The trial court told the jury that it might allow for damages to the buggy and harness if it found that any such damages were shown, and it is now said that there was no testimony whatever that there was any such damage, and that there was no direct testimony as to the amount of such damage. This is a mistake. There was sufficient testimony to take the matter to the jury upon the question of damages to the buggy. There was no testimony as to any injury to the harness, or as to the value thereof, and it would have been better had the court made no reference thereto. But the instruction authorized recovery for damages to the harness only in the event such damages were shown by the testimony. We must presume that the jury followed the instructions, and that it made no allowance for damages to the harness. There is no reason for supposing that the jury allowed anything for harness damage. The harness was not described, nor was there any testimony as to the value thereof at any time, or as to the damages done. Upon such a record we should not reverse because of the instruction given by the court on this matter. In support of these views see *Trapnell v. City,* 76 Iowa, 747; *Parks v. Town of Laurens,* 153 Iowa, 567.

10. DAMAGES: instruction: presumption.

If the jury disregarded the instructions of the court, the allowance for damages to the harness must have been small in any event, and such allowance would not call for a reversal. The verdict was small in view of the injuries sustained, and such errors as appear in the record are not sufficient to call for a reversal.

No prejudicial error appears, and the judgment will be, and it is,—*Affirmed.*