ESTELLA MAY BROWN, Appellee, v. DES MOINES STEAM BOT-
TLING WORKS et al., Appellants.

**NEGLIGENCE: Res Ipsa Loquitur—Running Automobile Upon Side-
1, 3 walk.** An accident and its attendant circumstances, without more, may furnish substantive, prima-facie evidence of negligence, and shift the burden of proof to defendant to show that he was not negligent in fact. In other words, accidents may have accusing tongues. So *held* where an automobile, in the exclusive charge of the servant of defendant, suddenly left the street upon which it was traveling and, without warning, ran upon the sidewalk and injured plaintiff.

**NEGLIGENCE: Proximate Cause—Independent Agency.** Liability
2 for negligence may not be avoided by pleading the interposition of a distinct, independent agency which reasonable care would have avoided. So *held* where the wheel of a motor truck dropped

into the curved groove of a switch and deflected the car upon the sidewalk.

PRINCIPLE APPLIED: A north and south street car track turned to the west at the northeast corner of a block and, by a switch, connected with an east and west main track. An automobile truck was moving eastward close to, and parallel with, the main track. Suddenly the north front wheel dropped into the curved groove in the track which led to the south, and, following the curve, deflected the truck to the southeast and upon the sidewalk and injured plaintiff. The driver knew of, and had often been over, this switch with the truck in question; but he approached it at the time in question without looking at it, with only one hand on the steering wheel, and without slackening his speed. The sudden turning of the car jerked the steering wheel out of his hand. *Held*, jury was justified in finding that, had the truck been under proper control, the accident would not have happened.

**NEGLIGENCE:** Res Ipsa Loquitur—Running Automobile Upon Side-
1, 3 walk.

**NEGLIGENCE:** Contributory Negligence—Evidence. Evidence re-
4 viewed, and *held* that a pedestrian who, after attempting to cross a street, retired to the sidewalk in order to allow a motor truck to pass, was not guilty of contributory negligence *per se*.

**APPEAL AND ERROR:** Assignment of Error—Brief—Preparation.
5 An assignment of error will be wholly disregarded when so indefinite as to necessitate speculation, or an independent investigation, on the part of the court or opposing counsel, in order to determine the precise point or proposition upon which appellant is asking a reversal.

PRINCIPLE APPLIED: Assignments were as follows:
1. "The court erred in refusing to give instruction No. 1 asked by defendant."
2. "The court erred in overruling defendant's objection to questions" at a certain named page and line of the abstract.
Wherein—in what manner—*why* the court erred was not stated. *Held*, wholly indefinite and that it would be disregarded.

*Appeal from Polk District Court.*—HUGH BRENNAN, Judge.

TUESDAY, MARCH 14, 1916.

ACTION to recover damages for personal injury. Verdict and judgment for the plaintiff below. Defendants appeal.— *Affirmed.*

*George Wambach* and *Read & Read,* for appellants.

*Dunshee & Haines,* for appellee.

GAYNOR, J.—This is an action to recover damages for personal injury. It is claimed that the defendants negligently and carelessly ran into and struck the plaintiff with their auto truck, while she was standing upon the side-

**1. NEGLIGENCE:** *res ipsa loquitur:* **running automobile upon sidewalk.**

walk at the southwest corner of Fifth and Locust streets. Locust Street runs east and west; Fifth Street north and south, intersecting Locust Street. The defendant was driving an auto truck proceeding eastward on Locust Street, south of the middle of the center of the street. Plaintiff, at the time of the injury, was standing at the corner of Locust and Fifth Streets, on the sidewalk, at a distance variously estimated at from 18 inches to 3 feet from the outer edge of the walk. On Locust Street, near the center of the street, are street car tracks, which, as they approach Fifth Street, are, by means of a switch, turned onto Fifth Street, passing south on Fifth; the main line on Locust Street proceeding east from that point.

On this particular morning, plaintiff came from the south on Fifth Street to the corner of Fifth and Locust Street. She proceeded on her journey northward, and attempted to pass over Locust Street; but, on discovering defendants' car approaching from the west, stepped back upon the sidewalk and remained standing there until she was struck. Defendant's car, as it came from the west on Locust Street, reached a point where the rails of the street railway track divide. At this point, cars on that street are switched onto Fifth Street. There, the evidence tends to show, defendants' car struck a frog or curve in the track, and was diverted from its main course eastward, and came upon the sidewalk where plaintiff was standing, causing her injuries; the frog in the Locust Street track, by which the cars are diverted from Locust Street onto the curve leading on Fifth Street, is about 47 feet west of the Fifth Street curb line, and from 12 to

18 feet north of the curb line on Locust Street. At the point of the frog, the track begins to curve around the corner onto Fifth Street. The sidewalks are 12 feet wide. The defendants' car, while being operated on Locust Street, was driven with the north wheel a little south of the street railway track, on Locust Street, and the evidence tends to show that the left front wheel of the car struck this frog and dropped into the flange, and the wheels were twisted towards the south. The car, thereafter, ran in a southeasterly direction until it struck the plaintiff, who was standing on the sidewalk at the corner of Locust and Fifth Streets.

The jury might have found from the testimony that the truck was running seven or eight miles an hour. There is a difference of opinion as to this point among the witnesses. The jury might have found that the speed was not reduced as it approached this curved track. The jury might also have found that the driver of the truck was not looking ahead, but to one side, and was driving with but one hand upon the wheel. The evidence discloses that the driver observed the plaintiff when she attempted to cross the track, and her return to the sidewalk. The jury might have found that he made no further observation upon this matter until he struck her.

The party in charge of the truck testified that he had crossed this track at this point frequently before with the same truck. He says that it was the flange of the switch that caused the machine to be thrown upon the sidewalk; that he had noticed this flange before when crossing at this point; that, when he struck the flange, his steering wheel was thrown out of his hands; that the car came with such terrific force against the flange that he was unable to hold the wheel; that he had used this car on previous occasions.

It appears that this was a Reo truck; that the lightest truck that the Reo people make weighs from 1,800 to 2,000 pounds. It appears that Locust Street had a wood block pavement; that the day was warm and dry. There is evi-

dence that a Reo truck traveling at 4 or 5 miles an hour may be stopped within 5 or 6 feet; that when moving at 7 or 8 miles an hour, it may be stopped in 10 or 12 feet.

The evidence discloses the following facts without dispute: That the defendants' car was traveling eastward on Locust Street; that plaintiff was standing on the sidewalk at the corner of Locust and Fifth Streets; that the defendants' car, without notice or warning to anyone, left the street upon which it was traveling, and came upon the sidewalk where plaintiff was standing and injured her. From this the jury could have found, nothing further appearing, that the driver of the car was negligent in allowing it to depart from its main course eastward, turning abruptly to the right, and, without warning, upon the sidewalk where people were standing, and where they had a right to stand. The jury could have found that the defendants, nothing further appearing, violated a duty that they owed to the general public to exercise reasonable care in the management of their automobile so as not to inflict injury unnecessarily upon those who were in the exercise of their right to be upon the sidewalk. Therefore, proof that the driver permitted his machine to be diverted from its main course of travel on the street to the sidewalk, without any warning to the people standing there of the fact of its coming, would be proof of such negligence, *prima facie,* as would, in and of itself, entitle the one injured by the act to recover as for negligence. Negligence presupposes a duty to do, or not to do, a particular thing. It was the duty of the driver of the automobile upon the traveled part of the street to control and manage his automobile with such reasonable care and prudence as not to divert or permit its course to be diverted from the main street onto the sidewalk upon which people were standing. Therefore, when it is shown that one who is traveling upon the portion of the street set apart for the use of vehicles suddenly and without warning diverts his course and comes upon the sidewalk upon which people are standing, he violates that duty which he owes to those right-

fully on the sidewalk, and thus, *prima facie,* becomes involved in negligence. This involves the doctrine of *res ipsa loquitur,* and says: You violated your duty to those rightfully standing upon the sidewalk by allowing your car to be diverted suddenly from its course and to come upon the sidewalk, without warning to those rightfully congregated there. It would be a doctrine against all reason to hold that one driving upon the traveled portion of a street with a dangerous, heavy and fast-moving vehicle may permit his vehicle to be suddenly diverted from its course upon the traveled street onto and over a sidewalk set apart for the use of pedestrians. It is not going too far to say that such an act not only involves negligence, but it would have a tendency to show a reckless and wanton disregard of the rights of those upon the sidewalk, and a violation of a palpable duty which the law enjoins upon every man, to so exercise his own right that he may not, unreasonably or unnecessarily, imperil the safety of others in the exercise of their rights.

It is claimed, however, that, without any fault on the part of the driver of this automobile, the machine was diverted from its course by the interposition of a distinct, independent agency over which the defendants had no control, and which, operating upon its move-ment, forced the machine, without any fault on his part, onto the sidewalk, to the injury of the plaintiff. It is claimed that the interposition of this new and independent agency was unforeseen and unanticipated by the defendants; could not have been foreseen and anticipated by them; that they were in no way in fault for its existence or interposition; and that this, and not the defendants' act, was the proximate cause of the injury. This contention, however, is answered by the record. The jury might well have found that the defendants knew of the existence of this independent agency, which it is claimed intervened and caused the injury; that, as the driver approached the place where this agency existed, he did not slacken his speed; that he

2. NEGLIGENCE: proximate cause: independent agency.

did not look to observe the manner in which he approached it; that he was not looking in front, but looking to one side; that he had but one hand upon the steering gear, and that, by the exercise of reasonable care on his part in the control and management of the machine, he could have avoided, or might have avoided, the impact with, and the consequences that followed the interposition of, this new agency, and thereby prevented the machine from being diverted from its course onto the sidewalk. It is a matter of common knowledge that the movements of these heavy, fast-moving vehicles upon the street are required to be kept under reasonable control, to avoid having their course diverted by the intervention of obstacles upon the street, and that, if not held under control, a slight obstacle will so divert them and imperil the safety of those rightfully upon the street; that, when diverted, they become a menace to those in the vicinity of their course, a menace from which it is difficult sometimes to escape. Therefore, it becomes the duty of one upon a public highway in a thickly populated part of a large city to exercise reasonable care to see that he has the instrumentality under control, and to so manage it that it will not unreasonably or unnecessarily imperil the safety of others upon the public highway. Whether the defendants did this in this particular case was clearly a question for the jury. The jury might well have found that, if the driver had his automobile under such perfect control as he should have had on a public street, and was giving reasonable attention to it, he might have avoided the collision with the flange at the switching point, or, having collided with it, might have stopped the same in time to have avoided the injury complained of.

The general rule is that, where a collision occurs between a vehicle on the wrong side of the road, or at a place where the vehicle has no right to be, with a person rightfully occupying the place, there is a presumption that the collision was caused by the negligence of the person who was in the wrong. This, however, of course, is open to explanation. The

3. NEGLIGENCE: *res ipsa loquitur:* running automobile upon sidewalk.

fact, however, remains that, if the truck left the public traveled highway and came upon the sidewalk where people were congregated, and, in so doing, collided with one rightfully upon the walk, defendants are, *prima facie,* guilty of negligence, and are liable for the injury, unless their act in so doing is excused by reason of the intervention of some independent agency over which they had no control, which, operating upon their movement, forced them without fault on their part, into the position as hereinbefore explained. See *Riepe v. Elting,* 89 Iowa 82, 90; *Carpenter v. Campbell Automobile Co.,* 159 Iowa 52. When the substantive fact is shown that the defendants departed from the line of travel which they had a right to pursue, and suddenly, without warning, came upon the sidewalk where plaintiff was standing, it then became their duty, in order to exculpate themselves, to explain and justify their conduct in so doing.

This brings us to a consideration of one of the errors assigned by the plaintiff, and the only one which we think justifies any consideration at our hands. The court in its fourth instruction to the jury said:

"And if you find from the evidence that the motor truck in question was run upon the sidewalk upon which the plaintiff was standing, this would be prima-facie evidence, and would raise the presumption that the defendants were negligent in running their motor truck upon the sidewalk."

This instruction is in accord with what we have already said, and announces a correct rule. If the defendants had desired the thought to be amplified, they should have asked an instruction upon that point.

We have read the record in this case with some care, and no reversible error appears. Many questions are argued which we do not feel called upon to discuss in this case, because, in so far as they are properly presented, they have been so frequently decided by this court that any further discussion of them would add nothing to what has already been said.

It is, however, urged that the plaintiff was guilty of con-

tributory negligence. We dismiss this by saying that the question was one for the jury, and the jury found adversely to defendants' contention. From our reading of

4. NEGLIGENCE: contributory negligence: evidence.

the record, we are satisfied that the plaintiff neglected no duty which she owed to herself for her own protection; that, when she retired to the sidewalk, she had every reason to suppose, as a reasonably prudent person, that she had secured a place free from any danger from contact with defendant's automobile. Under no theory of this case could she be expected to do more for her safety than it is apparent, from this record, that she did, unless it should be held that reasonable prudence and caution for her own safety required her to hide behind the lamp post or flee for safety into the building.

In view of the manner in which this case has been presented to this court, we desire to say that Section 53 of the

5. APPEAL AND ERROR: assignment of error: brief: preparation.

Rules of this court has a legitimate purpose among the Rules, and must be followed if counsel would have this court review errors alleged to have been committed by the court below. In law actions, all cases are triable upon error. Rule 53 provides that:

"The brief (of counsel) shall contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with the authorities relied on in support of them . . . no alleged error or point, not contained in this statement of *points,* shall be raised afterwards, either by reply brief, or in oral or printed argument, or on petition for rehearing."

In this case, the brief of counsel presents what are alleged to be 16 errors committed by the court. Commencing with alleged error 5, the assignment is in substantially the following language:

"The court erred in refusing to give instructions asked by the defendants, and so on, including alleged error No. 11."

No reason is given for reversing the ruling on error claimed, nor is our attention called to anything in the action of the court claimed to constitute error. Then commencing with alleged error No. 12, the brief recites:

"The court erred in overruling defendants' objection to questions at Page 24 of abstract, Line 7 and 9," etc., and substantially in the same language including error No. 15.

Errors 1, 2, 3 and 4 are the only errors with points in which any reason is given for reversal, or any statement of what the claimed error consists. We cannot and do not consider errors in this way, without any statement of *points* made. This rule was not made for the purpose alone of enabling this court to easily and readily appreciate and understand the errors complained of, but for the larger reason of enabling counsel on the other side to know what *points* are relied upon, and what is urged as error in the action of the court; and it is for the protection of counsel, as well as this court, that the rule is promulgated and enforced.

We find no reversible error in the case, and the cause is—
*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.