J. M. HANSON, Appellant, v. M. M. MANNING, Appellee.

No. 41047.

DECEMBER 16, 1931.

Moore & Moore and F. T. Van Liew, for appellant.

C. C. Putman and Paul H. Williams, for appellee.

MORLING, J.—The accident occurred upon an east and west highway, west, and within a few feet, of a private driveway running south to a farmhouse. Plaintiff was a guest in a car owned and driven by Cornelius (Father) Lalley. The car, headed east, was stopped on the right or south side of the graveled roadway about one and one-half feet from the south edge of the gravel, to repair the left back tire. A service car, facing west, was backed within 10 or 15 feet of the Lalley car. The accident occurred at about 5:30 in the afternoon of November 20, 1929, that being the hour at which plaintiff's watch, which was broken, stopped. It was not raining. The road was perfectly dry. It was dark. Father Lalley testified: "There is quite a clear view from the west, as you approach the place of the accident. We could see quite a distance; the road is straight." Beyond these matters there is no evidence as to weather conditions, or visibility. The lights of the Lalley car, facing east, and the tail light had been turned on. The lights of the service car, facing west, were on. On the rear or east end of the service car, was a tower. On this tower was a white light about 10 feet above the ground, which "appeared to be a stronger light than the ordinary headlight on an automobile." Repair men were working between the two cars in the light furnished from the tower. Father Lalley testified:

"I was the closer to the south side of the road. I was standing just inside the (his rear) fenders. Father Hanson

(plaintiff) at that time was standing just outside the back fender on the south side. I said to him * * * 'You better get in the car,' * * * So he started for the car. After I saw him start for the car, the next thing I remember was a shower of glass that came over, and the thing roared by. I did not hear the sound of an automobile horn or signal, or anything of that kind. I had no notice or knowledge of any approaching car. My back was turned toward the west. I thought at first it was the wind, but the other followed so rapidly I knew it was a car going by. * * * I stepped out to see where Father Hanson was, and not seeing him there, I looked down the road and saw him about 40 feet ahead of my car. I saw Dr. Manning's (defendant's) car; it was just stopping; it was 40 or 50 feet in advance of Father Hanson. It turned around and came back on the south side of the road where Father Hanson was. * * * From the time I noticed the shower of glass until I saw this car stopping ahead of me could not have been more than a minute. * * * I would say (that the speed of the Manning car was) about 50 miles, at least. * * * This tower light on the repair car was a good light and took in my whole car. * * * The door of my car was not broken. I understand that the glass came from the door of the repair car; I understand it was open. * * * I just saw the light flash by, and I immediately stepped out to see where Father Hanson was, and he wasn't there, and I saw him down ahead of the car. I knew a light had flashed by me, but didn't realize it was an automobile. * * * I did not go west and signal on-coming traffic, neither did Father Hanson, or anybody.''

The repair man testified:

''There was a noise, and some glass flew; that is about all I saw until I got my eyes cleared out a little. * * * From the point where this car was parked to the west, it is down grade for a quarter of a mile, or better. I could have seen a car coming within a quarter of a mile * * * if the lights were on it. I don't recall seeing any car coming. We worked in there two or three minutes, when I heard a crash. * * * I heard a car go past. There was a flash of light. * * * Glass fell around there * * * The road is 66 feet wide; the graveled portion of the road, the place of the accident, is 21 or 22 feet. * * * The

grass on the south side of the road, south of the Lalley car, is smooth and level.''

Plaintiff testified:

''Two men got out of the repair car. Father Lalley was close to them; I was a little further out toward the south * * * he said, 'you had better get in the car' * * * I had gotten to the door of his car, or about there, as I was facing his car, close enough to step in, and as I was in that position, a flash of light from the left hand from the west attracted my attention, an extra flash of light, and that is all I knew until I became conscious again after the injury. * * * I saw no car coming, but it makes me feel sure going at great speed. * * * I didn't hear any noise of this approaching car; the flash of light on my left was the first thing that attracted my attention. * * * I was not glancing to the west until that flash of light came by. I think I was standing facing the north. * * * The light was the first thing that attracted my attention. * * * It was a continual brightening up in front of the tow car. * * * I realized the light was coming from an approaching car afterwards. * * * I did not hear any horn or signal of any kind. The light was the only thing that attracted my attention. The Manning (defendant's) car was the only car that came around on the right side of us that evening. Other cars had come and gone on the left-hand side, both east and west.''

The defendant offered no evidence. On his motion, the court withdrew from the jury the pleaded charges that defendant negligently failed to sound a horn or give a signal, and failed to reduce the speed of his car so as not to endanger plaintiff; that defendant negligently drove outside of the traveled portion of the highway without giving signal of his approach and without leaving sufficient space for plaintiff to stand in safety beside the Lalley car; that defendant negligently operated his automobile without due regard to the rights of the plaintiff in the highway, and drove his car through plaintiff's place of safety without sufficient opportunity for plaintiff to escape. The court submitted to the jury but one specification of negligence: namely, that defendant ''was driving such vehicle upon the highway at a speed greater than would permit

him to bring it to a stop within the assured clear distance ahead." Defendant argues in this court:

"The court did submit one allegation of defendant's negligence * * * the evidence was clear and undisputed that the defendant was negligent in that particular. He did not deny it. That being true, and the jury having a clear case of negligence on the part of the defendant, what difference would it make whether the court submitted to the jury half a dozen other alleged acts of negligence or not? One would be enough to entitle the plaintiff to recover if he was not guilty of contributory negligence. The jury, knowing how fast the defendant was driving, and there being no dispute concerning his negligence in that particular, found for the defendant. The only issue that they could have found on was the question of contributory negligence. * * * Plaintiff therefore is not prejudiced by anything that he claims happened in the case."

However, defendant did not in the lower court concede that he was negligent. On the contrary, he moved to direct a verdict on the ground, among others, that the plaintiff had wholly failed to show that defendant was guilty of negligence. The jury might have found in defendant's favor on the one specification of negligence that was submitted to them. It is not shown that they found that plaintiff was guilty of contributory negligence.

The different specifications of negligence did not constitute separate causes of action. Hammer v. Chicago, R. I. & P. R. Co., 61 Iowa 56. They were not so pleaded. Plaintiff pleaded: "Defendant was careless and negligent in the operation of his said car in the following particulars, to wit,"—setting out seven particulars, including those which have been referred to. The cause of action is the operation of the car in a negligent manner so as to cause the car to strike the plaintiff. The negligence is properly alleged to have consisted not alone in one particular but in several, which were not separate or independent acts of negligence but one compound negligent act. Bongner v. Ziegenhein, 147 S. W. (Mo.) 182. All of the specifications which reasonable minds might find to be sustained by the evidence should have been submitted to the jury. Defendant concedes that "the evidence was clear and undisputed that the de-

fendant was negligent in that particular''—the one that was submitted.

■ ''* * * a car is under control, within the meaning of the law, if it is moving at such a rate and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity.'' Altfilish v. Wessel, 208 Iowa 361, 367.

See, also, Spiker v. Ottumwa, 193 Iowa 844, 849; Brown v. Des Moines Bottling Works, 174 Iowa 715, 721.

On this record the specification of failure to have the car under control and failure to reduce speed was intimately associated with the specification conceded in this court (not, however, to the jury) to be undeniable.

Negligence is a relative term. Both plaintiff and defendant were bound to exercise ordinary or reasonable care. Whether either or both have done so depends on the circumstances of the case. When from the facts and circumstances reasonable minds might come to different conclusions as to whether ordinary care was exercised or not, the question is for the jury. Wine v. Jones, 183 Iowa 1166; Vass v. Martin, 209 Iowa 870; Spiker v. Ottumwa, 193 Iowa 844, 849.

■ Plaintiff, or rather the owner of the car, had the right to stop (using reasonable care), and the owner and his employees had the right to make repairs and to use the highway in reasonable manner (exercising reasonable care) for that purpose. They were not trespassers, though they might have been negligent. Schacht v. Quick, 190 N. W. (Wis.) 87. Presence on one side of the street or the other is not *per se* negligence. Dickeson v. Lzicar, 208 Iowa 276; Simrell v. Eschenbach, 154 Atl. (Pa.) 369; Billingsley v. McCormick Transfer Co., 228 N. W. (N. D.) 424, 426; Schacht v. Quick (Wis.), 190 N. W. 87.

■ The Lalley car and the repair car, or at least the latter, were plainly visible. Their position on the south, or defendant's right-hand, side of the traveled track was apparent for at least a quarter of a mile before defendant reached it. The lights of the repair car at least were plainly visible, were on defendant's side of the road, directly in his path, were not moving. The car gave no evidence of turning or ground of expectation that it would get out of his way. Both cars were plainly visible, unless it was too dark to see them. The hour was about 5:30 in

the afternoon of November twentieth. It cannot be said as matter of law that in the circumstances at that hour defendant would not, in the exercise of reasonable care, have discovered the true situation. With at least one car plainly in his path, giving no evidence of changing its course, defendant plunged ahead (as the jury might find) at 50 miles an hour (or at a dangerous rate of speed), turned off upon the grass so close to the repair car as to break its open door, and to the Lalley car as to strike plaintiff in the act of stepping into it. The jury might find that the defendant in the exercise of reasonable care would have discovered that the cars he was approaching were not moving, but stationary; and from their position and stationary condition and the tower light and the circumstances, reasonable care required that defendant so control, direct and drive his car as not to injure those who would in the exercise of reasonable care have come under his observation. If the defendant knew, or in the exercise of reasonable care would have known, that the car before him was stationary, the jury might say that in the exercise of reasonable care he would have anticipated that at that time or that place the occupants were having car trouble, and might be out of the car to make inspection or repairs, or to subserve other proper purpose, and that it was his duty to take every reasonable precaution to prevent injury to any person who might be about it or who might be getting off of it. Snabel v. Barber, 300 Pac. (Ore.) 331, 335; Daughraty v. Tebbets, 120 Atl. (Me.) 354, 355; Cooper v. Agee, 132 So. (Ala.) 173, 174; Rhodes v. Fullilove, 134 So. (Miss.) 840; Simrell v. Eschenbach, 154 Atl. 369, 303 Pa. 156; 42 C. J. 909. See Scott v. O'Leary, 157 Iowa 222, 229.

The jury might find that defendant was recklessly driving at a speed which would take him over the one-fourth mile of straight road in less than a half minute; that defendant in the circumstances continued to drive at a negligently excessive rate of speed, and with such force that he could not reasonably expect to bring his car to a stop or to make timely reduction of speed or safely alter his course so as to avoid injury; that at the speed at which defendant continued to drive, in approaching the stationary cars in the circumstances, defendant could not stop his car within a reasonable space or reasonable time; that in the exercise of reasonable care defendant should have

sounded his horn and given warning of his approach and reduced his speed; that defendant was not exercising reasonable care in continuing to drive at the speed at which he was going, or veering off to his right, still maintaining such close proximity to the standing cars that persons who might, under the circumstances, be expected to be standing there would not be injured. The jury might find that in the particulars charged and withdrawn from the jury, above indicated, separately or in combination, defendant was negligent. Vass v. Martin, 209 Iowa 870; Simrell v. Eschenbach, 154 Atl. (Pa.) 369.

The defendant in argument assumes that the lights of the repair truck blinded or deceived defendant, and that defendant did not know that the repair truck was standing still, and was deceived into thinking that the repair truck was a moving car. Defendant assumes that defendant did not see the truck or tower light or observe that a car was stationed in the rear of the truck, and assumes that defendant did not know, and in the exercise of reasonable care would not have known, that persons were or might be standing about the truck and car and in peril from his automobile. These matters were for the jury, not for the court.

Plaintiff was not required, as matter of law, to keep a constant lookout for approaching vehicles. He was only required to exercise ordinary care. Whether he did so or not is a question of fact for the jury. Wine v. Jones, 183 Iowa 1166, 1170; Spiker v. Ottumwa, 193 Iowa 844, 849; Smith v. Spirek, 196 Iowa 1328, 1333; 42 C. J. 1135.

On the evidence, the jury might find that the defendant traversed the one-fourth mile of open road west of plaintiff in less than thirty seconds; that a look to the west when plaintiff started to get in the car would not have revealed danger, or have required plaintiff, in the exercise of reasonable care, to pause; that within a minute plaintiff, while in an apparently safe position or attitude of stepping into the car, was struck. Plaintiff was not bound to anticipate the negligence of the defendant of which the jury, on this record, might find him guilty. Hartman v. Red Ball Transportation Co., 211 Iowa 64.

The court should have submitted to the jury plaintiff's pleaded cause of action as including the specifications withdrawn hereinbefore set forth.

The court instructed that it was the duty of the plaintiff to use such precaution for his safety as a reasonably prudent and cautious man would have used in the same circumstances or similar circumstances, and that if, as such reasonably prudent and cautious person, he knew, or in the exercise of reasonable care would have known, that a car was approaching or was likely to pass on the right side of the repair car and automobile by which plaintiff was standing, ''then it was his duty to seek a place of safety at the approach of said car, and this duty existed whether he saw the car approaching or not, if, as a reasonably prudent and cautious person, under the circumstances, he should have seen and observed the approaching car.'' This instruction in effect made it the duty of the plaintiff to anticipate negligence on the part of the driver of an oncoming automobile. The instruction assumed that plaintiff was not in a place which was reasonably safe in the event of the approach of a car which was being driven with reasonable care. Plaintiff was not required to anticipate negligence on the part of the drivers of approaching vehicles. Id.; Shields v. Holtorf, 199 Iowa 37; Pixler v. Clemens, 195 Iowa 529, 532; 45 C. J. 954. The instruction was erroneous.—Reversed.

STEVENS, ALBERT, KINDIG, and WAGNER, JJ., concur.

FAVILLE, C. J., and EVANS, GRIMM, and DE GRAFF, JJ., dissent.