Verrine JORGENSEN, Administrator of the
Estate of James W. Jorgensen,
Deceased, Appellant,

v.

Wayne C. HORTON, Appellee.

No. 55381.

Supreme Court of Iowa.

March 28, 1973.

Harry H. Smith, Sioux City, for appellant.

Roy W. Meadows, Des Moines, for appellee.

McCORMICK, Justice.

Plaintiff appeals from judgment entered on a jury verdict for defendant in this wrongful death action. She alleges trial court erred in instructing the jury on the issues of defendant's negligence and her decedent's contributory negligence. We find trial court instructed correctly on negligence but incorrectly on contributory negligence, and reverse and remand.

Decedent James W. Jorgensen was employed as a laborer by a contractor laying asphalt in a golf course parking lot north of Sioux City. The rectangular lot measured 150 feet north and south and 250 feet east and west. A dirt road paralleled its west side about 20 feet from the lot. There were two driveways from the road to the parking lot. On the morning of June 18, 1968, the work was nearing completion. A 22 foot strip along the south edge of the lot remained to be paved. The asphalt was laid by machine but spots had to be filled in by hand. Jorgensen and a fellow employee, James Hanson, were using shovels to fill in the surface just east of the south driveway. They shoveled from a pile of loose asphalt at the north edge of the driveway. The paving machine was about 200 feet east of them. It ran out of asphalt.

Defendant Wayne C. Horton was a trucker hired by Jorgensen's employer to haul asphalt to the site. He was using a tandem dump truck with a large box containing 12 tons of asphalt. It was equipped with "west coast" mirrors, extending about one foot on each side of the truck for rear vision, but the box blocked vision to the immediate rear.

Horton left his truck on the dirt road and walked to the paving machine to get instructions. He was told to back his truck across the lot to the machine. As he returned to the truck he saw Jorgensen and Hanson shoveling asphalt near the south driveway entrance.

He proceeded to align his truck with the driveway. When he had the rear end lined up to start backing in he looked in his mirrors. He was unable to see behind the truck and saw no one in the mirrors, although he knew Jorgensen and Hanson were working in the area. He honked the horn of the truck three times and started backing. There was evidence from which the jury could find it was a windy day and that the paving machine and a roller were making considerable noise. The jury could also find Hanson and Jorgensen did not expect the truck to back over freshly laid asphalt because it was still soft and that the truck backed at an angle passing over the pile of loose asphalt at the north edge of the driveway. Jorgensen was shoveling with his back to the truck. Hanson heard the horn and saw the truck backing up. He shouted a warning to Jorgensen but did not know if it was heard over the wind. He got out of the way but Jorgensen did not. The truck backed over Jorgensen and killed him. Horton did not learn he had run over Jorgensen until he arrived at the paving machine.

I. *The negligence instruction.* Plaintiff first assigned as error trial court's refusal

to instruct the jury defendant's failure to post a signalman behind his truck was negligence per se. This specification of negligence was predicated on a standard in a construction industry safety code. Kenneth Olson, director of safety and inspection for the state bureau of labor, testified the safety code was prepared and promulgated by Associated General Contractors of America, Inc. (AGC), and is widely accepted in government and industry. The AGC Manual for Accident Prevention in Construction, published in 1958, states: "Trucks should be backed under the direction of a signalman, if operator cannot view area to the rear clearly."

Evidence of the standard was received after foundation was laid in the testimony of Olson. Trial court instructed the jury on this evidence in instruction 12 as follows:

"Evidence has been adduced in this case relative to a safety code in the construction industry and certain rules and regulations included therein. Proof of compliance or noncompliance with such safety code or specific rules thereunder is not conclusive upon the jury on the question of defendant's due care. It is your duty to determine the question of due care from all the facts in evidence adduced including any testimony with regard to safety codes and specific rules.

"If, therefore, you find that it was the duty of the defendant Wayne C. Horton under this and all the other instructions to give warning of his intention to back his truck other than by signaling with his horn either in person by the use of a flagman or traffic director, then any such failure would constitute a lack of due care on his part and would be negligence. * * *"

Thus trial court told the jury the safety code standard was evidence to be considered on the issue of defendant's negligence

in failing to warn Jorgensen but did not instruct that violation of the standard would be negligence. Plaintiff adequately preserved her complaint the instruction should have made failure to meet the standard negligence per se rather than evidence of negligence.

■ We have heretofore limited the doctrine of negligence per se to violations of statute or ordinance which establish the standard of care required under the circumstances. See, *e. g.*, Kisling v. Thierman, 214 Iowa 911, 915, 243 N.W. 552, 554 (1932):

"Statutes and ordinances such as these under discussion are a legislative prescription of a suitable precaution, or a fixing by law of the standard of care which is required under the circumstances, and it must follow that a failure to observe the standard of care thus fixed by law is negligence."

Unless a defendant failing to observe such standard shows a legal excuse for his failure, his negligence is established as a matter of law. Whether a statute or ordinance prescribes the required standard of care is decided in the light of its purpose and intent. Rosenau v. City of Estherville, 199 N.W.2d 125, 128 (Iowa 1972).

The Restatement of Torts, § 288B(1) at 37 (Second Ed.) offers this succinct statement of the rule:

"The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself."

See also Prosser on Torts, § 36 at 200–202 (Fourth Ed. 1971); 2 Harper and James, The Law of Torts, § 17.6 (1956); 57 Am. Jur.2d Negligence § 239 at 622–623; 65 C. J.S. Negligence § 1(14) at 461–462.

■ The rule originated in the theory that if a court permitted a jury to treat a

breach of statute or ordinance as only "evidence of negligence" leaving the question of negligence as a fact to the jury, the jury would thereby be informed "that it may properly stamp with approval, as reasonable conduct, the action of one who has assumed to place his own foresight above that of the legislature in respect of the very danger which it was legislating to prevent." Thayer, Public Wrong and Private Action, 27 Harv.L.Rev. 317, 322 (1913). We cannot apply the same reasoning to private safety codes which have not been given the force of law. The usual safety code represents a consensus statement by those who prepared it. See Philo, Use of Safety Standards, Codes and Practices in Tort Litigation, 41 Notre Dame Lawyer 1, 3. It may or may not promulgate standards equivalent to due care.

We believe such codes upon proper foundation are admissible but not conclusive on the issue of negligence. See, e. g., Cronk v. Iowa Power and Light Co., 258 Iowa 603, 612, 138 N.W.2d 843, 848 (1965). They are admissible as an exception to the hearsay rule on the basis of trustworthiness and necessity. Nordstrom v. White Metal Rolling & Stamping Corp., 75 Wash.2d 629, 453 P.2d 619 (1969); cf. McCormick on Evidence § 321 at 743–745 (Second Ed. 1972). As such they are an alternative to or are intended to buttress expert testimony. Frequently expert testimony will be used to impeach them. Evidence of experts is not ordinarily conclusive on the issue of due care whether found in a book or in oral testimony.

We are unwilling to say private safety codes like the one involved in this case necessarily define the standard of conduct of a reasonable man. Violation of standards in such codes is evidence on the issue of negligence but not negligence per se.

Trial court did not err in refusing to instruct the jury violation of the safety code in this case was negligence per se.

II. *The contributory negligence instruction.* Plaintiff also asserts trial court

erred in instructing the jury on defendant's charge Jorgensen was negligent in failing to heed Horton's warning by horn of the backing of the truck. The court told the jury in instruction 14:

"Mr. Horton for a further defense to the plaintiff's claim charges that Mr. Jorgensen was negligent in that he did not heed Mr. Horton's warning of honking the horn as the truck was moved back to the paver.

"You are instructed that it was the duty of Mr. Jorgensen to use his sense of hearing, as well as all his senses, to become aware of the lawful use of the driveway to the paver by others.

"If you find under the testimony in the case that Mr. Horton honked the horn on the truck before backing into the driveway and that Mr. Jorgensen did not heed such warning; and

"If you find that he heard such warning or, under the circumstances of this case, that he should have heard it, then Mr. Jorgensen would be negligent.

"If you further find that such failure on the part of Mr. Jorgensen was a proximate cause of his death, the plaintiff cannot recover and your verdict must be for the defendant."

Plaintiff excepted to this instruction as inconsistent with instruction 12 "in that it would lead the jury to believe that the honking of the horn was adequate notice to be given by the defendant; and that by giving such instruction the judge is in effect taking this jury question away from the jury and indicating that it was adequate * * *."

In her brief on appeal plaintiff assigns instruction 14 as erroneous because in conflict with instruction 12 in imposing upon Jorgensen "a duty to respond to an inadequate and negligent warning." The gist of plaintiff's argument may be summarized this way: Instruction 12 permitted the jury to find defendant negligent if in the

exercise of due care he should have given warning of his intention to back his truck "other than by signaling with his horn either in person by the use of a flagman or traffic director." Instruction 14 nevertheless told the jury plaintiff's decedent was negligent if defendant sounded a warning by horn which decedent heard or should have heard but did not heed. The vice in instruction 14 is that it has the effect of making failure to heed the horn negligence per se. It informs the jury as a matter of law one working behind a truck is adequately warned the truck is going to back over the area he is working if he heard or should have heard its horn before it started backing.

■ Our initial problem is whether plaintiff's exception at trial to instruction 14 was adequate. The general principles applicable to this determination are reviewed in Martin v. Jaekel, 188 N.W.2d 331, 335 (Iowa 1971). The issue is whether the exception "sufficiently alerted the trial court to preserve the question for review." The function of an exception is to alert trial court to the asserted error so the court may have an opportunity to correct it. Andrews v. Struble, 178 N.W.2d 391, 399 (Iowa 1970). We most recently applied this concept in Elkader Cooperative Company v. Matt, 204 N.W.2d 873 (Iowa 1973).

■ We believe the exception was sufficient in this case to alert trial court to its ground. In overruling the exception the trial judge showed he understood it. He defended instruction 14 as a proper statement of defendant's theory of the case whereas instruction 12 had been a proper statement of plaintiff's case. Plaintiff's exception was sufficient to preserve the question for consideration on appeal.

■ On the merits of the exception to instruction 14 we agree with plaintiff that the instruction incorrectly apprised the jury as to Jorgensen's duty and was inconsistent with instruction 12.

We do not believe trial court could tell the jury a warning by horn was adequate as a matter of law any more than it could inform the jury it was inadequate as a matter of law. No statute or ordinance is involved. The doctrine of negligence per se is inapplicable. The question is one of common law negligence and therefore Jorgensen is held to the standard of care of a reasonable man in the circumstances. "What is reasonable care under the circumstances is ordinarily a jury question." Appling v. Stuck, 164 N.W.2d 810, 814 (Iowa 1969). We see no reason to make an exception here.

In instruction 14 trial court told the jury a warning by horn was adequate if it was heard or should have been heard. However, a horn may be heard and still not taken by a reasonable man as a warning of personal danger. Jorgensen's attention was focused on his work. Discordant sounds are common at a construction site. In such circumstances it is not unreasonable to believe he was accustomed to "tuning out" the noise around him. Certainly his senses would not be as receptive to warning by horn as if he were a pedestrian starting across a busy street. Instruction 14 does not permit the jury to apply the reasonable man standard to Jorgensen. Even though the doctrine of negligence per se does not apply, the instruction presupposes a reasonable man in Jorgensen's position would receive the sound of a horn as a warning to get out of the way of the backing truck. The jury should have been permitted to determine whether the horn was adequate to warn Jorgensen, *in the exercise of reasonable care*, that the truck was going to back over the area he was working. That is, assuming Jorgensen heard or should have heard the horn, it was still for the jury to say whether he exercised due care in failing to heed it.

Defendant argues the court was simply instructing on his theory of Jorgensen's contributory negligence. However, where defendant's theory does not comport with

the law, he is not entitled to have the jury told it is the law.

The other deficiency in instruction 14 is its inconsistency with instruction 12. In division I we held instruction 12 was proper. In it the jury was permitted to find defendant negligent in failing to give a greater warning than signal by horn. The sufficiency of warning was for the jury. In instruction 14 the court told the jury, in effect, a warning by horn would as a matter of law be sufficient if it was or should have been heard.

■ Defendant seems to take the view consistency is unnecessary because the question of his negligence is wholly independent of the issue as to Jorgensen's contributory negligence. These issues are not wholly independent. They are based on the same record. The relative rights and duties of the parties are necessarily interwoven:

"Contributory negligence, like negligence, must involve a risk that is *unreasonable* under all the circumstances * * *. Here, as in the case of defendant's negligence, plaintiff's conduct is to be evaluated in its setting in the circumstances, and plaintiff will be entitled to make assumptions that are reasonable in the light of them. Negligence on either side of the scale is a term of relationship. Thus plaintiff may expect that defendant will obey the law and will act as a reasonable man would, unless the circumstances should warn him to the contrary. * * * Reasonable expectations of safety are just as much a part of ordinary prudent conduct as are expectations of danger." 2 Harper and James, The Law of Torts, § 22.10 at 1220–1230 (1956).

One may presume the due care of others until he knows or in the exercise of reasonable care should know otherwise. Han-

son v. Manning, 213 Iowa 625, 633, 239 N. W. 793, 797 (1931); see also Prosser on Torts, § 65 (Fourth Ed. 1971).

Accordingly, Jorgensen had a right to assume Horton would give a legally adequate signal of his intention to back the truck. Under instruction 12, which we have upheld, the jury was entitled to find a signal by horn was not legally adequate. Yet, in instruction 14 trial court instructed Jorgensen had a duty to respond to the horn if he heard or should have heard it. Thus, instruction 14 converts the horn to an adequate warning. Applying instruction 12 the jury could find Jorgensen's death was proximately caused by defendant's negligence in failing to give proper warning. Under instruction 14 the jury could nevertheless find plaintiff barred from recovery because Jorgensen failed to heed the inadequate warning. This nullifies defendant's duty and imposes a greater burden on Jorgensen than he is required to bear. What is a question of fact under one instruction cannot consistently be decided as a matter of law in another instruction. Cf. Bauman v. City of Waverly, 164 N.W.2d 840, 844–846 (Iowa 1969). Instruction 14 conflicts with instruction 12.

Trial court erred in instruction 14. The case is reversed and remanded for new trial.

Reversed and remanded.

All Justices concur except HARRIS, J., and LeGRAND, J., who dissent.

HARRIS, Justice (dissenting).

I respectfully dissent from division II and the result. The majority reverses the trial court for giving instruction 14 on two grounds. The first ground was not adequately presented or argued and was therefore not preserved. The second ground is based upon what I believe to be the application of a faulty rule of law.

I. The instruction is first disapproved by the majority for its failure to square the conduct it requires of decedent with the reasonably prudent man standard. The majority sees this failure as telling "the jury a warning by a horn was adequate as a matter of law * * *." The instruction given would have been improved by language which would have related decedent's conduct to the reasonably prudent man standard. But this deficiency was never urged by plaintiff. The record made on the subject at the time exceptions were taken to the instructions was as follows:

"MR. SMITH: Plaintiff excepts to— Plaintiff objects to Instruction Number 14 for the reason it is inconsistent with Instruction 12, in that it would lead the jury to believe that the honking of the horn was adequate notice to be given by the defendant; and that by giving such instruction the Judge is in effect taking this jury question away from the jury and indicating that it was adequate; and that therefore the duty follows the—

"THE COURT: (Interrupting) Isn't that the case in every situation where you have the spec of negligence? They are supposed to take them all into consideration with each other?

"MR. SMITH: It's the contention of the plaintiff—

"THE COURT: (Interrupting) We give you, in the plaintiff's case, we give you this one on the duty of—this is your spec on giving the proper—giving inadequate warning, either in person or by flagman or traffic director. Now we get around to giving defendant's case.

"MR. SMITH: I didn't get to complete my objection. Maybe I don't have to, but it's my contention that that instruction should be amended to the direction of finding of proximate cause by the jury; and as such it is improper."

Plaintiff's opposition to the instruction was limited to its failure to interweave the plaintiff's claims of defendant's negligence and defendant's claims of decedent's contributory negligence. The complaint did not reach the ground that it failed to encompass the reasonably prudent man standard. This is illustrated by the instruction requested by plaintiff as an alternative:

"Mr. Horton for a further defense to the plaintiff's claim charges that Mr. Jorgensen was negligent in that he did not heed Mr. Horton's warning of honking the horn as the truck was moved back to the paver.

"You are instructed that it was the duty of Mr. Jorgensen to use his sense of hearing, as well as all his senses, to become aware of the lawful use of the driveway to the paver by others.

"If you find under the testimony in the case that Mr. Horton honked the horn on the truck before backing into the driveway, *that Mr. Horton need have given Mr. Jorgensen no warning of his backing up other than honking,* and that Mr. Jorgensen did not heed such warning; and

"If you find that he heard such warning or, under the circumstances of this case, that he should have heard it, then Mr. Jorgensen would be negligent.

"If you further find that such failure on the part of Mr. Jorgensen was a proximate cause of his death, the plaintiff cannot recover and your verdict must be for the defendant." (Italics added)

The italicized portion of the above instruction indicates the only change requested by plaintiff. The first failure upon which the majority reverses the trial court was not preserved. If the language was inadequate in the instruction given, the same language was inadequate in the requested instruction.

II. I disagree with the rule adopted by the majority which compels an interweaving of adverse parties' opposing claims of negligence. The full import of such a rule

will become more apparent in some future case involving a suit and counterclaim. Even in the present situation the plaintiff should not be able, by reason of her claims as to defendant's conduct, to lower the standards of care required of her decedent.

Defendant argues "(o)nly if defendant's honking comprised adequate warning to decedent (i. e. a flagman was not necessary) could decedent be guilty of contributory negligence for not heeding horn blasts * * *."

I do not agree. The argument misapprehends the defendant's affirmative defense. Defendant does not claim he exercised due care in sounding a horn. He claims only that the decedent was negligent in failing to heed it. Plaintiff does not have the right to shape or to limit the scope of the affirmative defense by the nature and scope of his claim of defendant's negligence. He has no right, in law or logic, to require these conflicting claims to be either merged or to be mutually exclusive, even where they both happen by chance to relate to claims of warnings given or not given.

"If the person who is likely to be harmed by the act knows of the actor's intention to act, by his own observation or through a warning given by the actor, but nevertheless unreasonably insists upon his right or privilege to go upon or remain in the danger zone in the face of the risk manifestly involved in so doing, he may be charged with contributory negligence so as to preclude him from recovery (see Chapter XVII), * * *.

"This does not mean, however, that the actor's conduct is not negligent, but only that it does not result in liability because there is an available defense." Restatement (2d) of Torts, section 301, comment a, volume 2 at page 78.

The case should be affirmed.

LeGRAND, J., joins in this dissent.