**Edward MONTGOMERY, Appellant,**

v.

**Robert R. ENGEL and Jean M. Engel,
Appellees.**

No. 53843.

Supreme Court of Iowa.

Sept. 2, 1970.

Wilson, Rhinehart & Bikakis, of Sioux City, for appellant.

Shull, Marshall, Marks & Vizintos, of Sioux City, for appellees.

BECKER, Justice.

Plaintiff tenant fell while descending a stairs in the premises rented from defend-

ants. He sues for resultant injuries. At the close of all the evidence defendants' motion for a directed verdict in defendants' favor was sustained. Plaintiff appeals. We reverse.

The facts are relatively simple. The second floor apartment rented by plaintiff was serviced by an inside stairway which led both to the apartment and to the attic above it. Both the landlord and the tenant used the attic and the stairs in question but the landlord's use was quite infrequent. The tenant used the stairs as a means of ingress and egress and kept them clean.

Plaintiff's exhibit makes detailed description unnecessary.

[A 2633]

The material covering the treads was linoleum with a thin metal strip at the outer edge.

On August 4, 1966 at about 7:45 a. m. plaintiff left his apartment to go to work. He testified he fell on the fourth or fifth step:

"* * * I was not late that morning and I don't believe I was in any particular hurry as I started down the steps. I was carrying my daughter in my right arm. As I started down the steps, I turned to my right making a 90 degree right turn from the hall starting down. When my feet went out from under me I grabbed my child with both hands. I did not have anything in my left hand. My wife had almost reached the landing inside the door probably nine or ten steps ahead of me when I fell. She came back and took our daughter. * * *."

Plaintiff's description of the stairway surface was:

"If I remember correctly the linoleum was worn a little bit. You could tell because the pattern didn't show as brightly on the surface in the middle as it did on the edges, and there was a metal strip across the front of each step. As to the texture of the steps, smooth would probably describe them there. The steps were in the same condition on the day that I fell as they were when I moved into the apartment about a year earlier, although probably in a year they were worn a little bit more. * * *."

I. Plaintiff's third specification of negligence was a common law allegation and will be considered first. He alleged negligence in covering the treads with linoleum and metal stripping and allowing them to become worn, smooth and slippery.

■ The common law rule governing a landlord's duty is recognized in Stupka v. Scheidel, 244 Iowa 442, 447, 56 N.W.2d 874, 877:

"As a general rule an owner who has leased a building to another without any agreement to repair is not liable to the tenant, or to one who has entered the premises on the tenant's invitation, for personal injuries sustained by reason of their unsafe condition. However this rule does not apply where the owner retains control, or the owner and tenant have joint control, over the premises or the part thereof where the injury occurs.

"This exception to the rule is frequently invoked where an injury is caused by the condition of a hall, passageway, stairway, or elevator over which the owner, alone or jointly with the tenant, has control. Such an owner is liable to one who has been so injured after coming upon the premises by invitation from the tenant. There are other exceptions to the general rule which need not be considered here. * * *." The duty imposed on the owner is to exercise reasonable care to maintain those portions of the premises over which he retains control in a reasonably safe condition. Coleman v. Hall, (Iowa, 1968) 161 N.W.2d 329, 333.

■ The court held there was sufficient evidence to show the owner and tenant had at least joint control but held the evidence insufficient on the question of negligence. We agree. The statement that the linoleum was worn a little bit, the pattern was not as bright on the surface in the middle as on the edges and the linoleum was smooth does not, without more, show an unreasonably dangerous condition.

■ II. This same deficiency of evidence is apparent as to plaintiff's second specification which is based on violation of a city ordinance. The specification read:

"(b) They failed to maintain said stairway in sound condition and in a reasonably good state of maintenance and repair in violation of subsection 7.6 of Chapter 156.7 of the Municipal Ordinances of the City of Sioux City, commonly referred to as the Minimum Housing Code."

III. Dismissal of plaintiff's first specification of negligence raises more serious problems. Plaintiff alleged:

"(a) They failed to equip said stairway with at least one handrail in violation of subsection 5.13 of Chapter 156.5 of the Municipal Ordinances of the City of Sioux City, commonly referred to as the Minimum Housing Code."

The parties agreed no handrail had been provided. The city ordinance provides:

"Every exit from every dwelling shall comply with the following requirements:

"\* \* \*

"(c) All exit stairways of four or more risers shall have at least one handrail and all stairways which are five feet or more in width, or which are open on both sides, shall have a handrail on each side;"

The ordinance contains a definition of "exit".

"1.11 (a) Exit. Exit is a continuous and unobstructed means of egress from a building or dwelling contained therein to a public way and shall include intervening doorways, corridors, ramps, stairways, fire escapes, courts and yards."

The trial court held no duty was created because the ordinance provides for enforcement by way of penal provisions and implied the ordinance was not intended to create a duty from which statutory civil liability would flow.

Statutes are frequently silent as to whether or not the standards contained therein are meant to apply to civil negligence cases. The problems posed by such statutes are often far more complex than a surface view would indicate. Prosser, Law of Torts, Third Ed., § 35; Thayer, Public Wrong and Private Action, (1913) 27 Harvard L.Rev. 317; Lowndes, Civil Liability Created by Criminal Legislation, (1932) 16 Minn.L.Rev. 361; Morris, The Relation of Criminal Statutes to Tort Liability, (1933) 46 Harvard L.Rev. 453.

We have heretofore been called upon to decide whether principles adopted in legislative enactments are to be applied to civil cases. In Lattner v. Immaculate Conception Church, (1963) 255 Iowa 120, 129, 130, 121 N.W.2d 639, 645, we said:

"It must be admitted the primary purpose of these statutes appears to be protection from fire hazards. Also that there is much authority for the view the violation of a statute does not amount to negligence unless the plaintiff was a member of the class the statute is designed to protect and the harm is one the enactment is designed to protect. 38 Am.Jur., Negligence, sections 162, 163, pages 832, 833; 65 C.J.S. Negligence § 19e(2) and (4), pages 422–424. We are cited to no Iowa decision which holds to this view and our cases are to the contrary.

"The leading decision is Hansen v. Kemmish, 201 Iowa 1008, 208 N.W. 277, 45 A.L.R. 498, where plaintiff was injured in a collision between his automobile and defendant's boar, running at large on the highway in violation of our statute requiring certain male animals to be restrained. The opinion recognizes the statute was designed primarily to protect owners of female animals from damage that would result from undesired or inferior breeding and calls attention to an earlier decision that with respect to such damage the owner of the male is bound at his peril to restrain it from running at large.

"The opinion observes (page 1012 of 201 Iowa 208 N.W. 277): 'A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance.' It goes on to hold defendant was prima facie negligent and the question of his negligence was, as ordinarily, one of fact for the jury.

"An earlier precedent, Stewart v. Wild, 196 Iowa 678, 681, 195 N.W. 266, involved a similar question. Plaintiff was injured from a collision of his automobile with defendant's hog, running at large on the highway in violation of statute. The trial

court held plaintiff's petition demurrable. The controlling reason for the ruling was 'That such statute has ·no application to the rights of a traveler upon the highway, and that it imposes upon the owner of swine no duty with reference to such highway travel.' We held this view was erroneous and 'If the duty be imposed, then a breach of it is actionable if it result proximately in injury to another; and this equally true whether the duty be imposed by common law or by statute.'"

In addition to the Lattner case, supra, this court has held violation of a statute to be either negligence per se or prima facie evidence of negligence in numerous other cases. Haines v. Welker & Co., (1918), 182 Iowa 431, 434, 165 N.W. 1027 (wrongful garnishment); Kisling v. Thierman, (1936) 214 Iowa 911, 243 N.W. 552 (violation of the law of the road); Smith v. Chicago, B. & Q. R. Co., 227 Iowa 1404, 291 N.W. 417 (failure of train to whistle for crossing). Cf. Osborne v. Van Dyke, (1901) 113 Iowa 557, 85 N.W. 784 (plaintiff injured while defendant was beating a horse). Of course, except for the one instance noted in Kisling v. Thierman, supra, violations of statutes governing operation of motor vehicles constitute negligence per se under Iowa law.

Silvia v. Pennock, (1962) 253 Iowa 779, 783, 113 N.W.2d 749, 752, states: "Kisling v. Thierman, supra, 214 Iowa 911, 914–916, 243 N.W. 552, 554, and the many decisions which follow it hold the violation of statutory rules of the road, other than what is now section 321.298, is negligence as a matter of law unless a legal excuse for such violation is shown. * * *."

The Iowa cases cited have in fact, if not in the language employed, followed the principle recognized in 2 Harper and James, The Law of Torts, (1956) § 17.6, page 997:

"It has sometimes been suggested that criminal statutes be disregarded altogether in considering the rights and liabilities of parties to civil litigations, but as a general proposition this has commanded virtually no judicial support. The almost universal American and English attitude is that where legislation prescribes a standard of conduct for the purpose of protecting life, limb, or property from a certain type of risk, and harm to the interest sought to be protected comes about through breach of the standard from the risk sought to be obviated, then the statutory prescription of the standard will at least be considered in determining civil rights and liabilities. The authorities divide, however, on the effect to be given the statute. There are two main lines of decisions. Probably a majority of American courts have adopted the rule that the unexcused violation of such a statutory standard is negligence per se, that is, negligence as a matter of law (to be ruled by the court). In a substantial number of jurisdictions such a violation is held to be evidence of negligence to be weighed by the jury."

As to the fact a statute by its terms carries only a criminal sanction and is silent as to civil sanction, Restatement, Torts, Second, § 287 states:

"A provision for a penalty in a legislative enactment or an administrative regulation has no effect upon liability for negligence unless the penalty is found to be intended to exclude it."

IV. Defendants rely on Johnson v. Carter, (1934) 218 Iowa 587, 593, 255 N.W. 864, where we considered section 6392, Code of Iowa, 1931 (now section 413.66, Code, 1966) as a part of the statutory housing law of the state. Plaintiffs was injured when part of the side wall of a basement fell on her. This court held the statute did not create a duty on the part of the landlord upon which civil liability could be predicated, saying:

" * * * We feel that the lack of any specific reference, either in the title or in the body of the Iowa Housing Law, to the relation of landlord and tenant, and the absence of anything in either the title or

the body of the law to indicate an intention to change the common-law rule and impose civil liability upon the landlord for damages sustained by a tenant growing out of a failure to repair in the demised premises, indicate that there was no intention on the part of the legislature to change such rule and impose such liability."

Johnson v. Carter, supra, has been quoted with approval in Casey v. Valley Savings Bank, (1941) 231 Iowa 19, 25, 300 N. W. 733 (alleged violation of passenger and freight elevator provisions, now chapter 104, Code, 1966, held inapplicable to hotel guest); Case v. City of Sioux City, (1955) 246 Iowa 654, 659, 69 N.W.2d 27 (section 368.33, Code, 1966, requiring property owners to remove snow and ice, held not to impose liability to traveling public, responsibility remains solely with the city); and distinguished Lamasters v. Snodgrass, (1957) 248 Iowa 1377, 1385, 85 N.W.2d 622 (liability of owner for another's negligent use of airplane, held statute imposed liability).

■ This case must be distinguished from Johnson v. Carter, supra, on the ground of announced legislative purpose. We first note that ordinarily we make no distinction between construction of statutes and ordinances. Hedges v. Conder, (1969, Iowa) 166 N.W.2d 844. The preamble and the body of the ordinance considered here reflect a legislative intent to govern the owner-tenant relationship. The ordinance states:

"An ordinance establishing minimum standards governing the condition and maintenance of dwellings; * * * *establishing minimum standards governing the condition of dwellings offered for rent;* fixing certain responsibilities and duties of owners and occupants of dwellings; * *."

§ 156.5: "No person shall occupy as owner-occupant *or let to another for occupancy any dwelling, or dwelling unit, for the purpose of living, sleeping, cooking and/or eating of meals therein which does not comply with the following requirements.*" (Emphasis supplied.) The provision relating to

exits is one of the standards laid down under § 156.5.

The United States Court of Appeals in Whetzel v. Jess Fisher Management Co., (1960, Bazelon, Cir. Judge), 108 U.S.App. D.C. 385, 282 F.2d 943, 946, considers this problem in depth with extensive citations of authorities. The court states:

"* * * A penal statute which is imposed for the protection of particular individuals establishes a duty of care based on contemporary community values and ethics. The law of torts can only be out of joint with community standards if it ignores the existence of such duties. See Evers v. Davis, 1914, 86 N.J.L. 196, 90 A. 677; Morris, The Role of Criminal Statutes in Negligence Action, 49 Colum.L.Rev. 21 (1949)."

Unlike Johnson v. Carter, supra, the legislation in this case contains sufficient evidence of intent to bring this case within the situations intended to be affected by the legislation. In Crane v. Cedar Rapids and Iowa City Ry. Co., (Iowa 1968) 160 N.W.2d 838, 841, we said:

"It is also well settled ' "the nature of the duty imposed by a statute and the benefits resulting from its performance" usually determine what persons are entitled to invoke its protection'. * * *."

■ We hold the allegation charging negligence in failing to comply with the ordinance requiring a handrail should have been submitted to the jury.

V. Since this case is remanded for retrial the question of whether the alleged ordinance violation constitutes negligence per se or merely prima facie evidence of negligence should be resolved. As heretofore indicated our prior cases have not been consistent in answering this question. Each case has been decided in light of the purpose and intent of the statute or ordinance involved. An excellent discussion indicating the wisdom of this approach with extensive review of authorities is found in Whetzel v. Jess Fisher Manage-

ment Co., (1960, Bazelon, J.), 108 U.S.App. D.C. 385, 282 F.2d 943, 945–948. See also, Morris, The Relation of Criminal Statutes to Tort Liability, supra, and Prosser, Law of Torts, § 35, page 203:

"* * * The arbitrary classification of all breaches of statute as negligence per se or no negligence at all leaves too little flexibility for the standard of reasonable care."

■ We hold evidence of violation of the ordinance here involved is prima facie evidence of negligence. Cf. O'Donnell v. Barach, (1954), 1 Ill.App.2d 157, 116 N.E. 2d 912.

■ VI. If the jury finds defendants were negligent, there is still the issue of proximate cause. "Generally, questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law." Rule 344 (f) (10), Iowa Rules of Civil Procedure. This is not one of the extraordinary cases to which reference is made. The jury could conclude from viewing Exhibit 10 that the logical place for a handrail was on the left-hand wall as plaintiff descended the stairs. The picture shows the stairs to be quite steep. Plaintiff was carrying his child in his right arm. Whether absence of the handrail required by ordinance was causally connected to plaintiff's fall is a matter upon which reasonable minds might differ. Dahna v. Clay County Fair Assn., (1942) 232 Iowa 984, 987, 988, 6 N.W.2d 843, 845, states:

"* * * It is sufficient if the injuries are the natural, though not the necessary or inevitable, result of the wrong; such injuries as are likely, under ordinary circumstances, to ensue from the act or omission in question. * * *."

■ VII. The defenses of contributory negligence and assumption of risk, if finally held to be proper in this case, are for the jury. In argument defendants as-

sume but do not support the proposition that assumption of risk is a proper defense here. Due to inadequate presentation of this issue we do not decide the matter at this time.

VIII. We conclude the trial court erred in granting a directed verdict and remand for new trial.

Reversed and remanded.

All Justices concur, except RAWLINGS, J., who takes no part.