Susan E. GRIGLIONE, As Administrator
of the Estate of Rodney John
Griglione, Appellant,

v.

Steven MARTIN and City of Mt.
Pleasant, Iowa, Appellees.

No. 93–958.

Supreme Court of Iowa.

Dec. 21, 1994.

David S. Wiggins of Wiggins & Anderson, P.C., West Des Moines, for appellant.

David A. Elderkin of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

CARTER, Justice.

Plaintiff, Susan Griglione, as personal representative of her husband, Rodney, appeals from an adverse judgment in an action against a police officer and the City of Mt. Pleasant. Plaintiff's action against the City and officer Steven Martin grew out of Martin's action in fatally shooting plaintiff's decedent on October 24, 1989.

Plaintiff's civil damage action on behalf of Rodney Griglione's estate contained counts against Martin based on negligence, assault and battery, and a violation of federal civil rights laws under 42 U.S.C. § 1983. The action contained counts against the City, alleging that it was vicariously liable on the negligence and assault and battery counts against Martin. It also contained a claim against the City based on 42 U.S.C. § 1983. The § 1983 claim against Martin alleged that he acted to deprive Rodney Griglione of his life and liberty without due process of law guaranteed by the Fourteenth Amendment to the federal constitution. The § 1983 action against the City alleged that it had not provided proper training to Martin in the use of deadly force.

The district court sustained the City's motion for summary judgment as to the § 1983 count against it in advance of trial. The other counts against Martin and the City were tried to a jury, which found for the defendants on all claims. As grounds for reversal of the resulting judgment, plaintiff contends that the district court erred in failing to instruct the jury that an officer's violation of a police department operating procedure is negligence per se. She also urges that it was error for the court to grant summary judgment for the City on her § 1983 claim. The court of appeals rejected both of these contentions and affirmed the judgment of the district court. On further review of the court of appeals decision, we also affirm that judgment.

During an eight-month period in 1989, Rodney Griglione had lived with his girlfriend, Paula Blythe, with whom he had been carrying on an affair while married to Susan. Approximately a month before his death, he left Paula and moved back to the residence where Susan resided. On the evening of October 23, 1989, Rodney telephoned Susan from a bar. She concluded from the tone of his voice that he was intoxicated. Susan also received two phone calls that evening from Paula Blythe advising her that Paula had been receiving threatening calls from Rodney.

When Rodney returned home later that evening, he asked Susan for the keys to the car. When she refused to give them to him, Rodney left the house. At this time Susan telephoned Paula, warning her that Rodney might be coming to her residence. Paula then telephoned the Mt. Pleasant Police Department, which dispatched officer Martin to investigate. After arriving at Paula's residence and going inside, officer Martin heard noises coming from outside. He exited her mobile home to investigate the source of these sounds. According to officer Martin, he heard someone yelling profanities at him. He then heard footsteps and, with the use of his flashlight, observed Rodney climbing over a fence with a large knife in his right hand.

Officer Martin testified that Rodney began running toward him. At some point, officer Martin drew his pistol and fired at Rodney

three times, fatally wounding him. There was evidence indicating that officer Martin failed to identify himself as a police officer during the events that accompanied the fatal shooting. Other facts bearing on the issues will be considered in our discussion of the points of law urged by the parties.

I. *Whether a Violation of a Police Department Operating Procedure is Negligence Per Se.*

The first issue we consider is whether a violation of a police department operating procedure is negligence per se or merely evidence of negligence. Plaintiff offered evidence that officer Martin violated the standard operating procedures promulgated by the Mt. Pleasant Police Department by not obtaining backup to handle a disturbance call, in failing to identify himself as a police officer before firing his service revolver, and in not attempting alternative means to avoid the use of deadly force. The district court instructed the jury that the City of Mt. Pleasant had adopted standard operating procedures for the use of deadly force, which were described in the court's instructions. The instruction then advised the jury that "[a] violation of this standard operating procedure is evidence of negligence."

■ Plaintiff urges that the jury should have been instructed that a violation of the police operating procedures would constitute negligence per se rather than only being some evidence of negligence. We disagree with that contention for two reasons. First, our prior cases direct that, in order for the violation of rules of conduct to constitute negligence per se, those rules must establish specific standards that are to be followed unwaveringly in all instances. *Jorgensen v. Horton,* 206 N.W.2d 100, 102 (Iowa 1973); *see* Restatement (Second) of Torts § 285 cmt. b (1965). Whether this is the case is to be determined in light of the purpose of the particular rule. *Porter v. Iowa Power & Light Co.,* 217 N.W.2d 221, 237 (Iowa 1974).

The preamble to the operating procedures that are at issue here states:

The following Police Department Standard Operating Procedures are guidelines that are suggested for occurrences as specified as follows. They will never replace good, sound judgment or common sense, but when confronted with an unfamiliar situation should serve as an aid to the Officer.

Another portion of these written policies states the following:

The Deadly Force Policy is written to guide officers before the fact in approaching a potentially critical situation and not merely to assist in assessing the possible liability after the fact. The use of deadly force in effecting an arrest shall be based on the concept of protection of the officer or other person from the use, or threat of use of deadly force.

These written procedures, when read as a whole, do not involve the delineation of that type of precise standard required to invoke the negligence per se doctrine.

■ There is a second reason for rejecting plaintiff's argument. We believe rules of conduct that establish absolute standards of care, the violation of which is negligence per se, must be ordained by a state legislative body or an administrative agency regulating on a statewide basis under authority of the legislature. That is the position espoused in Restatement (Second) of Torts § 286 (1965) and followed by this court in *Jorgensen,* 206 N.W.2d at 102. We are persuaded that, for purposes of civil damages actions based on allegedly negligent actions by municipal employees, this principle is sound. There should not be differing standards of care based on the varying policies of the particular municipal corporation. The district court did not err by failing to give a negligence per se instruction with respect to the alleged violation of the police operating procedures.

II. *Whether Summary Judgment Was Properly Granted on Plaintiff's 42 U.S.C. § 1983 Claim Against the City.*

Plaintiff argues that the district court erred in granting summary judgment for the City on her claim under 42 U.S.C. § 1983. This issue involves her allegation that the City's training of officer Martin in the use of deadly force was inadequate.

The City took the deposition of an expert witness retained by the plaintiff. In that

deposition, this witness testified that a video entitled "Surviving Edged Weapons," shown to officer Martin by the Mt. Pleasant Police Department, was inadequate training for handling situations involving edged weapons. The witness then opined that, if this were the only training Martin received on combating assailants armed with edged weapons, he would have been ill-trained for such encounters.

The district court concluded that, because plaintiff had presented no evidence concerning either the presence or absence of other training that officer Martin might have received from the City, she had established only a hypothetical deficiency in training procedures. The court concluded that because this was all that plaintiff had presented her case was fatally deficient. Plaintiff asserts that the district court improperly placed the burden of showing the lack of a material factual dispute on the resisting party rather than the moving party. A determination of that contention requires a review of the basic principles that govern the granting of summary judgments.

■ To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law. *Goodwin v. City of Bloomfield*, 203 N.W.2d 582, 588 (Iowa 1973). This may be attempted by both the party seeking relief in the action (Iowa R.Civ.P. 237(a)) and the party defending against the claim (Iowa R.Civ.P. 237(b)). To affirmatively establish uncontroverted facts that are legally controlling as to the outcome of the case the moving party may rely on admissions in the pleadings, *see Fisher Controls Int'l v. Marrone*, 524 N.W.2d 148, 149 (Iowa 1994), affidavits, or depositions, answers to interrogatories, and admissions on file. Iowa R.Civ.P. 237(c).

■ Except as it may carry with it express stipulations concerning the anticipated summary judgment ruling, a statement of uncontroverted facts by the moving party made in compliance with rule 237(h) does not constitute a part of the record from which genuine issues of material fact may be determined. *Glen Haven Homes, Inc. v. Mills County Bd. of Review*, 507 N.W.2d 179, 182 (Iowa 1993). The statement required by rule 237(h) is intended to be a mere summary of claims that must rise or fall on the actual contents of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Id.* When the evidentiary matter tendered in support of the motion does not affirmatively establish uncontroverted facts that sustain the moving party's right to judgment, summary judgment must be denied even if no opposing evidentiary matter is presented. *Mead v. Lane*, 203 N.W.2d 305, 307 (Iowa 1972).

■ When the foregoing principles are applied to the City's motion for summary judgment on plaintiff's § 1983 claim, they sustain her contention that the City's motion was not sufficiently supported to establish the nonexistence of a material factual dispute concerning the adequacy of officer Martin's training. Because the City's motion was not adequately supported in this regard, we need not consider the sufficiency of plaintiff's resistance to the motion.

The City urges that this issue should be determined under a stricter standard for resisting motions for summary judgment, which it refers to as the "new federal standard." It asserts that this new federal standard, approved in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 274 (1986), allows the grant of summary judgment when, after adequate time for discovery, a party is unable to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. The City contends that we approved this standard in *Behr v. Meredith Corp.*, 414 N.W.2d 339, 341 (Iowa 1987).

■ The matters to which the City refers involve the establishing of a right to summary judgment by means of showing the limits of the proof available to the party seeking relief. The City is correct in assuming that this means of obtaining summary judgment has been approved by this court. *See, e.g., Cox v. Jones*, 470 N.W.2d 23, 26 (Iowa 1991) (statutory requirement for time-

ly designation of expert witness invoked by defendant to preclude required expert testimony at trial). To obtain summary judgment by this means, it is essential that the moving party demonstrate that the proof available to the claimant at trial will be limited to evidence that will not be sufficient to sustain a right to relief. The mere filing of a summary judgment motion, however, does not serve to limit the extent of the resisting party's potential proof at trial. Such limits must be established through procedural devices separate and apart from the summary judgment motion, such as statutory limitations on designating expert witnesses, *see* Iowa Code § 668.11 (1993), concessions on proof in answers to interrogatories filed by the resisting party, or pretrial orders limiting proof at trial to that evidence disclosed through discovery and closing the discovery process at a fixed time. The record on the motion for summary judgment at issue here does not show that plaintiff's potential proof at trial had yet been limited to that which was contained in a single deposition taken by plaintiff's opponent.

■ Although the City's motion for summary judgment was not supported adequately to place the burden on plaintiff, at the summary judgment stage, to prove all essential elements of her case, we are unable to agree that the judgment should be reversed. The fact that plaintiff might be able to establish at trial that the City's training of officer Martin concerning the use of deadly force was inadequate would not make out a case under § 1983. It must also be shown that, as a result of that inadequate training, officer Martin acted to deny the civil rights of plaintiff's decedent.

The showing that we last referred to is required not because the City's liability under § 1983 is vicarious. It is required because an act by Martin denying Rodney Griglione's civil rights is an essential element of causation in plaintiff's case against the City. This requirement was clearly stated in *Revene v. Charles County Commissioners,* 882 F.2d 870 (4th Cir.1989):

> [W]hile municipalities ... may be liable under § 1983 for inadequate police training policies that directly cause constitutional deprivations by individual police officers, the test of municipal liability is a most stringent one. To establish municipal liability on this basis, a claimant must allege and prove that a municipal governing body (or its authorized policymakers) has followed a policy of inadequate training for its police in respect of particular tasks for which "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need, *and that the inadequate training actually caused a claimed [constitutional] injury.*"

*Id.* at 874 (emphasis added) (citations omitted). The Iowa Court of Appeals has also recognized that a municipality may be held liable under § 1983 only when its acting employee has in fact caused a violation of civil rights as a result of a municipal custom or policy. *Allen v. Anderson,* 490 N.W.2d 848, 854–55 (Iowa App.1992).

Unfortunately for plaintiff's position, the jury has determined that officer Martin did not act to violate the civil rights of plaintiff's decedent. That determination has been confirmed by a judgment that is now being affirmed on appeal. All of this has occurred in an action in which plaintiff, officer Martin, and the City were parties. We do not believe that this essential element of plaintiff's case remains an open question. She is precluded from establishing a point essential to her right of recovery under § 1983.

We have considered all issues presented and conclude that the decision of the court of appeals and the judgment of the district court should be affirmed.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**