# IN THE COURT OF APPEALS OF IOWA

No. 14-0199
Filed May 20, 2015

KATHRYN WINGER and
TIMOTHY POTTS,
　　　Plaintiffs-Appellants/Cross-Appellees,

vs.

CM HOLDINGS, L.L.C.,
　　　Defendant-Appellee/Cross-Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Richard G. Blane II,

Judge.


　　　The plaintiffs appeal from the district court's grant of a new trial in this

negligence action.　The defendant cross-appeals from the court's denial of its

motion for directed verdict. **AFFIRMED ON BOTH APPEALS.**


　　　Robert G. Rehkemper and Cory F. Gourley of Gourley, Rehkemper, &

Lindholm, P.L.C., West Des Moines, for appellants.

　　　Brenda K. Wallrichs of Lederer Weston Craig PLC, Cedar Rapids, and

Michael Carmoney and Jack W. Leverenz of Carmoney Law Firm, Des Moines,

for appellee.


　　　Heard by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, C.J.**

This appeal and cross-appeal involve the tragic death of the plaintiffs' twenty-one-year-old daughter after a fall from a balcony. The jury was instructed as a matter of law that the defendant was negligent for failing to have balcony guardrails at least forty-two inches in height. The jury awarded damages to the plaintiffs, and subsequently, the district court granted a new trial concluding it had erroneously instructed the jury. In dispute is whether a violation of Des Moines Municipal Housing Code, Neighborhood Inspection Rental Code section 60-127, which requires guardrails "not less than 42 inches in height," is negligence per se. We conclude the answer is "no," but may be evidence of negligence. Accordingly, we agree with the district court's grant of a new trial. We also reject the defendant's contention it was entitled to a directed verdict and affirm the trial court's grant of a new trial.

**I. Background Facts and Proceedings.**

The plaintiffs, Kathryn Winger and Timothy Potts, are the parents of Shannon Potts, who on July 23, 2011, at the age of twenty-one, fell off a balcony of the Grand Stratford Apartments in Des Moines, Iowa, owned by the defendant, CM Holdings, L.L.C. Shannon died from injuries suffered in the fall. The railing on the balcony from which Shannon fell was thirty-two inches in height. The plaintiffs sued CM Holdings for loss of consortium, claiming it was negligent in a number of respects, including failing to comply with the guardrail height requirements of the housing code, allowing a dangerous condition to exist on its premises, and failing to maintain the property in a safe condition.

Prior to trial, CM Holdings filed a summary judgment motion, asserting it had received an extension of time from the Des Moines Housing Appeals Board to bring the guardrails into compliance and thus was legally excused from any negligence associated with having only thirty-two-inch guardrails. The plaintiffs filed a motion for partial summary judgment, asking the trial court to determine CM Holdings was negligent per se in failing to bring the balcony railings into compliance with the housing code. CM Holdings resisted, asserting the plaintiffs' motion was untimely and that violation of a municipal housing code was not a basis for negligence per se. Following a hearing, the trial court denied the plaintiffs' summary judgment motion as untimely. It also denied CM Holding's summary judgment motion, ruling the housing board's extension of time to bring the guardrails into compliance did not constitute a waiver to comply with the housing code, and thus was not a legal excuse.

A jury trial was held beginning on November 4, 2013. On November 6, CM Holdings submitted proposed jury instructions concerning housing code provisions.[1] At the close of the evidence, CM Holdings moved for a directed verdict on two grounds: first, that the guardrails were "grandfathered" into the housing code existing at the time the apartment complex was built and, therefore, CM Holdings was not negligent for having thirty-two-inch guardrails; and second, that if the guardrails were not code compliant, CM Holdings' violation of the

---

[1] Specifically, one instruction referred to section 60-5 ("Any structure that was in compliance on the day previous to the adoption of this code will be allowed to remain."), stating that "if you find [the section] applied" to the building at issue, "you must find that defendant was not in violation of the Des Moines Housing Code Section 60-127, and was not negligent as alleged." Another proposed instruction provided that if the jury found CM Holdings had a valid of extension of time from the housing board, "you must find that defendant was not negligent."

housing code was legally excused. For their part, the plaintiffs moved for a directed verdict on the issue of liability, asserting CM Holdings was negligent per se for failing to have forty-two-inch guardrails. On November 8, 2013, the trial court issued a written "Ruling on Legal Issue of Violation of Municipal Housing Code," concluding:

> The Court also finds that since the Defendant did not file an appeal with the [housing appeals board] HAB, the Notice of Inspection finding that the lattice did create a change that required the guardrail to [be] updated to be in compliance with the new code height of 42 inches[] cannot now be collaterally attacked by the Defendant in this lawsuit. As noted above, Defendant never followed the appeal process, never filed an appeal from the city's determination, and never challenged that it was obligated to install 42 inch guardrails on the balconies.
> Finally, since Iowa Code § 562A.15(1)(a) [(2011)] requires an owner to "comply with the requirements of applicable building and housing codes materially affecting health and safety," and the evidence establishes the railing requirement was a matter of safety, such violation constitutes negligence per se. *See Wiersgalla v. Garrett*, 486 N.W.2d 290, 292-93 (Iowa 1992).

Thereafter, the jury was instructed,[2] in part:

> Instruction No. 15
> You are instructed that the Court has determined as a matter of law that pursuant to the Des Moines Municipal Housing Code the Defendant was required before July 23, 2011, to install guardrails that were at least 42 inches in height on the balcony of Apartment No. 9 at 531 - 35th Street Des Moines, Iowa.
> Defendant's violation of law is negligence as to Instruction No. 16.

> Instruction No. 16
> The Plaintiffs claim that the Defendant was at fault. Fault was explained to you in Instruction No. 10. The Court has determined as a matter of law the Defendant was negligent in Instruction No. 15 and at fault.

---

[2] After the trial court's November 8 ruling of negligence per se, CM Holdings did not request its proposed instructions (noted in footnote 1) be given, though it did object to the ruling and ask that the court reconsider.

In order to recover against the Defendant, the Plaintiffs must prove propositions 1 and 2.

1. The Defendant's fault was a cause of Decedent's death and damage to the Plaintiffs.

2. The amount of damages.

If the Plaintiffs have failed to prove either numbered proposition 1 or 2, they are not entitled to recover damages. If the Plaintiffs have proved numbered propositions 1 and 2, you will consider the defense of comparative fault as explained in Instruction No. 17.

The jury returned special interrogatories finding CM Holdings sixty-five percent at fault and Shannon Potts thirty-five percent at fault and finding each of the plaintiffs had each sustained $875,000 in damages.

CM Holdings filed a motion for new trial, or in the alternative a remittitur, asserting the court's finding of negligence per se was erroneous and the damages awarded were excessive. It also filed a motion notwithstanding the verdict (JNOV) on the same grounds as its motion for directed verdict. The court denied the defendant's JNOV motion and granted a new trial, concluding it had improperly taken the issue of CM Holding's negligence from the jury. The plaintiffs appeal, and the defendant cross-appeals.

**II. Scope and Standards of Review.**

The scope of our review of a district court's ruling on a motion for new trial depends on the grounds raised in the motion. *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006). If a motion for new trial is based on a discretionary ground, we review the ruling for abuse of discretion. *Hansen v. Cent. Iowa Hosp. Corp.*, 686 N.W.2d 476, 480 (Iowa 2004). If the ruling granting a new trial was prompted by a motion on a

legal question, our review is for errors of law. Iowa R. Civ. P. 1.1004(8); *Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007).

On cross-appeal, CM Holdings argues the district court committed legal error in not granting its motion for JNOV.

Our standard of review on motions JNOV was recently summarized by our supreme court:

> We review a district court's ruling denying a motion for judgment notwithstanding the verdict for correction of errors at law. *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). On review, we "determine whether sufficient evidence existed to justify submitting the case to the jury at the conclusion of the trial." *Lee v. State*, 815 N.W.2d 731, 736 (Iowa 2012). To justify submitting the case to the jury, substantial evidence must support each element of the plaintiff's claim. *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010). "Evidence is substantial when reasonable minds would accept the evidence as adequate to reach the same findings." *Doe v. Cent. Iowa Health Sys.*, 766 N.W.2d 787, 790 (Iowa 2009). We view "the evidence in the light most favorable to the nonmoving party." *Id.*

*Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014).

**III. Discussion.**

*A. Appeal—Plaintiffs' challenge to the grant of a new trial.* Winger and Potts maintain the "only time the trial court was wrong was when it thought it was wrong but was actually right." They contend a violation of a municipal ordinance is negligence per se; the violation of the housing code was also a violation of Iowa Code section 562A.15 (2011), which is also negligence per se; and the

statutory provision violated[3] is sufficiently specific so that a violation of it constituted negligence per se.

Iowa has long recognized the principle of negligence per se. *See Kisling v. Thierman*, 243 N.W. 552, 554 (Iowa 1932). The principle exists because we recognize some behavior involves an unreasonable danger to others. *See Rinkleff v. Knox*, 375 N.W.2d 262, 265 (Iowa 1985) ("[T]he real basis of negligence in the primary sense is not carelessness but behavior which should be recognized as involving an unreasonable danger to others."). In *Jorgensen v. Horton*, 206 N.W.2d 100, 102 (Iowa 1973), the court observed, "We have heretofore limited the doctrine of negligence per se to violations of statute or ordinance which establish the standard of care required under the circumstances." Most recently, our supreme court has opined:

> [R]ules of conduct that establish absolute standards of care, the violation of which is negligence per se, *must be ordained by a state legislative body or an administrative agency regulating on a statewide basis under authority of the legislature*. That is the position espoused in Restatement (Second) of Torts § 286 (1965) and followed by this court in *Jorgensen*, 206 N.W.2d at 102.

*Griglione v. Martin*, 525 N.W.2d 810, 812 (Iowa 1994) (emphasis added). The plaintiffs argue the emphasized statement in *Griglione*—that a standard must be statewide to constitute negligence per se—is dicta and in conflict with prior cases, as well as the Restatement (Second) and (Third) of Torts, and it should not have been relied upon by the trial court to grant a new trial.[4] However, "[w]e

---

[3] The plaintiffs cite section 562A.15(1)(a)(1), which provides: "The landlord shall . . . [c]omply with the requirements of applicable building and housing codes materially affecting health and safety."

[4] We note that one authority reports, "Most states apply negligence per se to the violation of city ordinances. . . . But a few states regard violation of a city ordinance as

are not at liberty to overturn Iowa Supreme Court precedent." *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990); *see State v. Miller*, N.W.2d 841 N.W.2d 583, 584 n.1 (Iowa 2014); *State Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.").[5]

In any event, the parties' very arguments demonstrate the housing code's guardrail height requirement is not an ordinance the violation of which would constitute negligence per se because the required height is not a standard that is to be followed "unwaveringly in all instances." *See Griglione*, 525 N.W.2d at 812 ("[O]ur prior cases direct that, in order for the violation of rules of conduct to constitute negligence per se, those rules must establish specific standards that are to be followed unwaveringly in all instances." (citing *Jorgensen v. Horton*, 206 N.W.2d 100, 102 (Iowa 1973), and Restatement (Second) of Torts § 285 cmt. b (1965)).

Here, we may have a specific standard for balcony railings in the city of Des Moines but there is no statewide standard. As Iowa Code section 562A.15(1)(a)(1) implies, each city can impose its own building and housing code. Further, it is difficult to say it is to be followed unwaveringly in all instances. The plaintiffs rely upon the guardrail height restriction contained in the

only evidence of negligence. *E.g.*, *Griglione v. Martin*, 525 N.W.2d 810 (Iowa 1994)." Restatement (Third) Torts: Physical & Emotional Harm § 14, Reporter's Note cmt. a (Westlaw database updated March 2015); *see also* Barbara Kritchevsky, *Tort Law is State Law: Why Courts Should Distinguish State and Federal Law in Negligence-Per-Se* Litigation, 60 Am. Univ. L. Rev. 71 (Oct. 2010) (noting the *Griglione* case requires a state legislative body to create state law for negligence-per-se purposes).

[5] While the parties argue over whether a city ordinance can ever be considered a standard that the violation thereof constitutes negligence per se, that is not the issue we are to decide.

housing code in 2011. CM Holdings argues a different, lower guardrail height was set forth in an earlier municipal code. The city inspector testified the building at issue complied with the city code in effect at the time it was built in 1968. He also acknowledged owners of existing property are not required to bring their building "up to code" every time the municipal code is changed and buildings are "routinely grandfathered in."[6]

The requisite specific, unwavering standards have been found in OSHA requirements. *See Koll v. Manatt's Transp. Co.*, 253 N.W.2d 265, 270 (Iowa 1977); *but see Wiersgalla v. Garrett*, 486 N.W.2d 290, 292-93 (Iowa 1992) (acknowledging that *Koll* had held that "violation *by an employer* of an OSHA or IOSHA standard is neligence per se *as to* [the employer's] *employee*," 253 N.W.2d at 270, but concluding the trial court had erred in instructing the jury that a violation of an OSHA standard by a *co-worker* constituted negligence per se).

In *Montgomery v. Engle*, 179 N.W.2d 478, 483-84 (Iowa 1970),[7] however, our supreme court held that a violation of a Sioux City municipal housing code requiring handrails at "every exit from every dwelling" was not negligence per se, but was evidence of negligence.[8] We conclude the same is true of the guardrail

---

[6] However, the evidence provided that CM Holdings had received four separate notices that the balcony railings were in violation of the Des Moines Housing Code.

[7] We acknowledge the *Montgomery* case was decided before the passage and implementation of the Iowa Code chapter 562A, the Uniform Residential Landlord and Tenant Law. Thus, the *Montgomery* case would not be a precedential deterrent if the supreme court chose to rely upon Iowa Code section 562A.15(1)(a)(1), and of course, our supreme court could choose to join the majority recognizing negligence per se for ordinance violations. Nonetheless, we feel bound to the principles espoused in *Griglione*.

[8] In *Struve v. Payvandi*, 740 N.W.2d 436, 442-43 (Iowa Ct. App. 2007), this court addressed the question of whether the trial court erred in refusing to submit the plaintiff's negligence-per-se theory to the jury. There, the plaintiff suffered brain damage as a result of carbon monoxide poisoning. *See Struve*, 740 N.W.2d at 438. The plaintiff sued

ordinance here. We agree with the trial court that it was error to apply negligence per se here, and affirm the grant of a new trial.

*B. Cross-Appeal—CM Holdings's challenge to denial of JNOV.* On cross-appeal, CM Holdings argues the district court erred in denying it judgment notwithstanding the verdict because (1) the thirty-two inch guardrails were code compliant because they were "grandfathered in" and (2) if the guardrails were not code compliant, CM Holdings' violation of the housing code was legally excused. "The legal excuse doctrine allows a person to avoid the consequences of a particular act or type of conduct by showing justification for acts that otherwise would be considered negligent." *Rowling v. Sims*, 732 N.W.2d 882, 885 (Iowa 2007). We have already determined that a violation of the guardrail ordinance does not establish conclusive proof of negligence, i.e., negligence per se. We believe the corollary is also true—that compliance with an ordinance that may or may not be grandfathered does not constitute conclusive proof of reasonableness. There is also a dispute regarding if the railings were grandfathered in and whether they had lost that status due to some modification of the railings by the attachment of plastic latticework by plastic zip ties. Finally,

---

her landlord, asserting theories of common law negligence, negligence per se under Iowa Code section 562A.15(1)(d) (2005), and a violation of the implied warranty of habitability. *Id.* The trial court concluded section 562A.15(1)(d) was a general standard and did not give the jury enough information to determine whether the defendant was negligent per se. *Id.* Following an unfavorable verdict, the plaintiff appealed. We determined the plaintiff was entitled to a new trial because the trial court had not instructed the jury on her theory of liability under the implied warranty of habitability. *Id.* at 442. But we found no error in the trial court's rejection of negligence per se. *See id.* at 443 (noting section 562A.15(1)(d) does not define what constitutes a good and safe working condition in a furnace, nor does it define adequate maintenance for a furnace but "merely indicates that the landlord shall maintain heating appliances in a safe and working order"). In a footnote, this court noted the landlord had complied with a Cedar Rapids municipal code requirement that furnaces were to be inspected every seven years.

CM Holdings contends if they were in violation of the housing code, they were legally excused because of the extension afforded them by the city to rectify the problem, but it would seem CM Holdings could have withheld renting the units or locked access to the balconies until the work was completed.  Yet, because we are remanding for a new trial, we leave these issues to the district court to rule on in the first instance.

**AFFIRMED ON BOTH APPEALS.**

Vaitheswaran, J., concurs specially; Doyle, J., dissents.

**VAITHESWARAN, J.** (concurring specially)

I specially concur. I agree CM Holdings's violation of the Des Moines housing code's balcony-guardrail height requirement was evidence of negligence rather than negligence per se, but I write separately because I reach the conclusion for somewhat different reasons than the district court or majority.

First, I am not convinced this court's opinion in *Struve v. Payvandi*, 740 N.W.2d 436 (Iowa Ct. App. 2007), is controlling, as CM Holdings argues. In *Struve*, a tenant sued a landlord for a furnace malfunction, alleging "theories of common law negligence, negligence per se under Iowa Code section 562A.15(1)(d) (2005)[9], and a violation of the implied warranty of habitability." *Struve*, 740 N.W.2d at 438. Struve argued "the trial court erred when it refused to submit her negligence per se theory to the jury." *Id.* at 442. This court acknowledged a statutory violation could constitute negligence per se, but stated "the statute must have enough specificity to establish a standard of conduct." *Id.* at 442-43. We said section 562A.15(1)(d) lacked the requisite specificity. It simply required the landlord to "[m]aintain" heating appliances "in good and safe working order" without defining "what constitutes a good and safe working condition in a furnace" or define "adequate maintenance for a furnace." *Id.* at 443. Because the statute was devoid of "a specific standard of conduct from which a fact finder could find a violation," we concluded "the trial court did not err when it refused to submit Struve's negligence-per-se theory to the jury." *Id.* We had no reason to decide whether Iowa Code section 562A.15(1)(a)[10] was

---

[9] This provision is now numbered Iowa Code section 562A.15(1)(a)(4) (2015).
[10] This provision is now numbered Iowa Code section 562A.15(1)(a)(1) (2015).

sufficiently specific to establish a standard of conduct and whether breach of the standard constituted negligence per se. Accordingly, I believe *Struve* is inapposite.

Second, I believe *Griglione v. Martin*, 525 N.W.2d 810 (Iowa 1994), permits a conclusion that a violation of a municipal housing code is negligence per se. In *Griglione*, the court first said, "[I]n order for the violation of rules of conduct to constitute negligence per se, those rules must establish specific standards that are to be followed unwaveringly in all instances. Whether this is the case is to be determined in light of the purpose of the particular rule." *Griglione*, 525 N.W.2d at 812 (citations omitted). The court concluded certain written police procedures cited by the plaintiff failed to delineate the "type of precise standard required to invoke the negligence per se doctrine." *Id.* Second, the court stated,

> [R]ules of conduct that establish absolute standards of care, the violation of which is negligence per se, must be ordained by a state legislative body or an administrative agency regulating on a statewide basis under authority of the legislature. That is the position espoused in Restatement (Second) of Torts § 286 (1965) and followed by this court in *Jorgensen*, 206 N.W.2d at 102.

*Id.*

I agree *Griglione* mandates a statewide standard before violation of the standard will be deemed negligence per se. I disagree such a standard is absent here.

Winger and Potts rely on more than the Des Moines housing code. They cite Iowa Code section 562A.15(1)(a) (2011) of the Iowa Uniform Residential Landlord and Tenant Act, which requires landlords to comply with applicable

housing codes materially affecting health and safety. This is a statewide standard incorporating by reference municipal housing codes. The housing code provision—as prescribed by *Griglione*—is absolute and specific: balcony guardrails are to be no less than forty-two inches high. *Cf. Struve*, 740 N.W.2d at 442 n.3 (noting Cedar Rapids municipal code contained general requirement to maintain heating equipment "in good and safe working condition").

I recognize the forty-two inch height requirement is not itself a legislative enactment of statewide application. This fact, CM argues, should preclude section 562A.15(1)(a) from being "construed as a basis for imposing negligence per se" because, then, section 562A.15(1)(a) "would serve as the basis for hundreds of different standards of care for landlords across the state." The argument finds some support in *Griglione*, where the court stated, "There should not be differing standards of care based on the varying policies of the particular municipal corporation." *Griglione*, 525 N.W.2d at 812. But this language is easily distinguished because *Griglione* dealt with written "procedures" rather than an ordinance. *See also Jorgensen v. Horton*, 206 N.W.2d 100, 103 (Iowa 1973) (declining to find breach of private safety code to be negligence per se because the code did not have "the force of law"). Unlike those procedures, ordinances have the force and effect of law. *See Hedges v. Conder*, 166 N.W.2d 844, 851 (Iowa 1969) ("The prevailing view is that an ordinance of the character referred to here is not to be distinguished from a statute."); *Boardman v. Davis*, 3 N.W.2d 608, 611 (Iowa 1942) ("It is uniformly held that ordinances have the same force and effect within the corporate limits as do laws passed by the legislature.").

Accordingly, I believe the quoted language of *Griglione* is not an impediment to a negligence per se conclusion.[11]

While, in my view, *Griglione* allows for a conclusion that a violation of a specific standard in a municipal housing code amounts to negligence per se, I believe *Montgomery v. Engel*, 179 N.W.2d 478 (Iowa 1970), dictates a contrary result. There, a tenant fell on the apartment stairs. He sued the landlord for injuries, alleging in part that the landlord "failed to equip said stairway with at least one handrail in violation of" the Sioux City "minimum housing code." *Engel*, 179 N.W.2d at 481. The court squarely addressed the question "whether the alleged ordinance violation constitutes negligence per se or merely prima facie evidence of negligence." *Id.* at 483. Acknowledging "prior cases have not been consistent in answering this question," the court said the inconsistencies could be explained by the court's focus on "the purpose and intent of the statute or ordinance involved." The court endorsed "the wisdom of this approach." *Id.* at 483-84. Having found the ordinance evinced an intent to cover this type of situation, the court summarily held "evidence of violation of the ordinance here involved is prima facie evidence of negligence." *Id.* at 484.

As the majority points out, *Engel* was decided before the enactment of the Iowa Uniform Residential Landlord and Tenant Act. But it addresses the precise

---

[11] In my view, the larger hurdle faced by Winger and Potts in arguing that a breach of the Des Moines housing code was a breach of Iowa Code section 562A.15(1)(a) and amounted to negligence per se is the fact their daughter was a guest of a tenant rather than a tenant herself. The Iowa Supreme Court has declined to answer the question whether the Iowa Uniform Residential Landlord and Tenant Act imposes statutory duties on landlords for the benefit of visitors. *See Crawford v. Yotty*, 828 N.W.2d 295, 304 (Iowa 2013) ("[W]e need not decide whether section 562A.15(1)(a)–(d) of the IURLTA imposes statutory duties that are applicable to visitors of tenants."). We also do not need to consider the question because it was neither raised nor addressed in the district court.

issue we face—whether a landlord's violation of a specific municipal housing code requirement should constitute negligence per se or evidence of negligence. In my view, the court's holding that the violation is simply evidence of negligence rather than negligence per se is controlling. Accordingly, I concur in the majority opinion affirming the grant of a new trial.

**DOYLE, J.** (dissenting)

I respectfully dissent. I believe the violation of the Des Moines Municipal Housing Code's balcony-guardrail minimum-height requirement was negligence per se, not merely evidence of negligence. For the reasons stated in the special concurrence, I too am not convinced that *Struve v. Payvandi*, 740 N.W.2d 436 (Iowa Ct. App. 2007), is controlling. Although I also agree with the special concurrence that *Griglione v. Martin*, 525 N.W.2d 810 (Iowa 1994), does not foreclose the possibility of a conclusion that a violation of a municipal housing code is negligence per se, I do not agree that *Griglione* mandates a statewide standard before violation of the standard can be deemed negligence per se. Additionally, I part ways with the majority and special concurrence in that I do not believe *Montgomery v. Engle*, 179 N.W.2d 478 (Iowa 1970), is controlling in this case.

The *Griglione* court stated:

> [R]ules of conduct that establish absolute standards of care, the violation of which is negligence per se, must be ordained by a state legislative body or an administrative agency regulating on a statewide basis under authority of the legislature. That is the position espoused in Restatement (Second) of Torts § 286 (1965) and followed by this court in [*Jorgensen v. Horton*, 206 N.W.2d 100, 102 (Iowa 1973)].

525 N.W.2d at 812. That is a misstatement and is *not* the position espoused by that Restatement or *Jorgensen*. *See Jorgensen*, 206 N.W.2d at 102; Restatement (Second) of Torts § 286.

The Restatement defines "legislative enactment" as including "both statues and *ordinances*." Restatement (Second) of Torts § 286 cmt. a (1965) (emphasis added). Furthermore,

> Whether the legislative body of a municipality or other subdivision of a state has power to define a standard of conduct obligatory between citizens as to tort liability, is a question of public law . . . . In so far as there is such power, a municipal ordinance has the same force and effect as a statute enacted by the legislature of a State, or by the Congress.

*Id.* at § 285 cmt. b.  Despite what *Griglione* says, the Restatement does not require that rules establishing absolute standards of care "be ordained by a state legislative body or an administrative agency regulating on a statewide basis under authority of the legislature" before a violation of the rule can be found to be negligence per se.  *See id.*

Nor does *Jorgensen* stand for such a proposition.  *See Jorgensen*, 206 N.W.2d at 102.  *Jorgensen* cites Restatement of Torts (Second) section 288B(1) (1965) as a "succinct statement of the rule" that the "unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself."  *Id.*  Again, "legislative enactment" includes ordinances.  *See* Restatement (Second) of Torts § 286 cmt. a (1965).  Like the Restatement, *Jorgensen* does not require an ordinance to have statewide effect before a violation of it can be found to be negligence per se.  *See Jorgensen*, 206 N.W.2d at 102.  I can only conclude the "statewide standard" language of *Griglione* is unsupported dicta and is therefore not controlling upon us.

The higher hurdle plaintiffs face is the *Montgomery* case.  179 N.W.2d at 478-84.  In resolving the question of whether an ordinance violation constitutes negligence per se or just evidence of negligence, the *Montgomery* court acknowledged "our prior cases have not been consistent in answering this

question.  Each case has been decided in light of the purpose and intent of the statute or ordinance involved."  *Id.* at 483.  In applying "the wisdom of this approach," and with no analysis and discussion as to the purpose and intent of the ordinance in question, the court held that violation of a city housing code requiring handrails in stairways was prima facie evidence of negligence, not negligence per se.  *See id.* at 483-84.  The case at hand is distinguishable from *Montgomery*.

Here the ordinance has enough specificity to establish a standard of conduct.  *See Griglione*, 525 N.W.2d at 812.  In fact, it is very precise—a guardrail must be not less than [forty-two inches]" in height.  The purpose and intent of the ordinance is crystal clear.  Its purpose is to protect persons from falling from heights.  Its intent is to prevent injury and death.  Dr. Hinrich, the plaintiffs' expert, testified the forty-two-inch requirement in the Des Moines housing code "originated from the International Building Code, the standard that has been adopted by most municipalities in the United States."  He further testified:

> The International Building Code is based on—that they arrived at the [forty-two]-inch minimum height based on where the average person's center of gravity falls when standing.  And I'm sure that there was originally research done in order to arrive at that height of [forty-two] inches.
> But essentially if you have a [forty-two]-inch high guardrail, for the vast majority of people, except for the tallest individuals, that [forty-two] inches will be above the height, the standing height, of one's center of gravity.
> And if you have something that's above the center of gravity, you're less likely to fall over it than if something is below the center of gravity.  There's something very important about that point that we call the center of gravity and how high it is relative to the top of the guard rail.

Dr. Hinrich opined that a forty-two-inch high guardrail would have saved Shannon from falling and that she would be alive today but for the fact the rail was thirty-two inches instead of forty-two inches. This was precisely the kind of tragic incident the ordinance was designed to prevent. Viewed in light of the purpose and intent of the ordinance, I would conclude violation of the ordinance constitutes negligence per se. Accordingly, I would reverse the district court's grant of a new trial, and I would reinstate the jury's verdict.

As long as I have the podium, I address a frequently noted appellate practice issue. I observe that witnesses' names were not placed at the top of each page where transcript testimony appears in the parties' appendix. *See* Iowa R. App. P. 6.905(7)(c) ("The name of each witness whose testimony is included in the appendix *shall* be inserted on the top of *each* appendix page where the witness's testimony appears." (emphasis added)). By this note, I do not single out these parties or their attorneys, for I have made similar observations in countless appeals. My comment is directed to the appellate bar. While the noted infraction may seem trivial, the violated rule is not just some rigmarole designed to create more work for the appellate lawyer. Having the name at the top of each page makes it much easier for the court to navigate an appendix. Compliance with the rule saves precious time, reduces frustration, and assists this court in meeting its mandate to achieve maximum productivity in deciding a high volume of cases. *See* Iowa Ct. R. 21.11.