# IN THE COURT OF APPEALS OF IOWA

No. 21-1132
Filed July 20, 2022

**JONATHAN ARMSTRONG,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.

An applicant appeals the summary disposition of his application for postconviction relief. **AFFIRMED.**

Christopher J. Roth of Roth Weinstein, LLC, Omaha, Nebraska, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**BADDING, Judge.**

Years after his convictions for crimes committed during a "violent home invasion," *Armstrong v. State*, No. 17-1160, 2018 WL 4636094, at *1 (Iowa Ct. App. Sept. 26, 2018), Jonathan Armstrong filed a postconviction-relief application claiming he was actually innocent of those crimes. His claim was based on what he said was an "unsolicited" report from a fellow inmate that "all purported witnesses to [his] alleged crimes had expressed desires to recant their testimony," and "they intend to submit statements under oath to the court." The State moved for summary disposition, following which Armstrong requested that an investigator be appointed at State expense to assist counsel in "locating and interviewing witnesses." Armstrong's motion was denied. Because Armstrong did not subsequently present any evidence to support his claim of actual innocence, the court granted summary disposition. Armstrong appeals.

## I.    Background Facts and Proceedings

In 2012, a jury found Armstrong guilty of multiple offenses for his role in a raid on a home with seven occupants, none of whom were able to identify Armstrong as one of the home invaders.[1] Armstrong appealed, challenging the sufficiency of the evidence supporting his convictions and the effectiveness of his trial counsel. *See generally State v. Armstrong*, No. 12-0426, 2013 WL 2107400 (Iowa Ct. App. May 15, 2013). We agreed counsel was ineffective by failing to

---

[1] Armstrong was convicted of one count of assault with intent to inflict serious injury, five counts of third-degree kidnapping, six counts of first-degree robbery, one count of first-degree burglary, and one count of carrying weapons. The court ordered five of the robbery convictions to merge into the remaining robbery conviction and sentenced him to a total prison sentence not to exceed twenty-five years, with a mandatory seventy-percent minimum.

object to flawed jury instructions on third-degree kidnapping. We reversed his five convictions for that crime and remanded for a new trial on those charges only. *Id.* at *1. Armstrong's remaining convictions were affirmed. After procedendo issued, the State dismissed the kidnapping charges.

Armstrong filed his first postconviction-relief application in February 2014, generally alleging "insufficient evidence" and ineffective assistance of trial and appellate counsel. Following trial, the district court rejected Armstrong's claims and denied his application. Armstrong appealed and, finding he failed to "show a reasonable probability of a different outcome even if counsel had followed the playlist developed in the [postconviction-relief] application," we affirmed. *Armstrong*, 2018 WL 4636094, at *1.

Armstrong filed the application leading to this appeal in March 2020. In an amended application filed by counsel in June, Armstrong asserted:

> Since the conclusion of his 2014 application for postconviction relief and within three years of the filing of his current application for postconviction relief, Mr. Armstrong has discovered evidence that was not available at the time of his criminal trial, which is evidence of his absolute innocence and which evidence is so compelling that no reasonable juror upon hearing the evidence could find him guilty of the alleged crimes. To wit, a fellow inmate approached Mr. Armstrong unsolicited and told him that all purported witnesses to Mr. Armstrong's alleged crimes had expressed desires to recant their testimony as it relates to Mr. Armstrong. All witnesses have become convinced that Mr. Armstrong was not one of the perpetrators against them, and they intend to submit statements to the court under oath.

The State responded with a motion for summary disposition, asserting the application was time-barred by the three-year statute of limitations, and Armstrong failed to adequately show a new ground of fact to except him from the statute of limitations. The State pointed out that no victim ever identified Armstrong as the

culprit, and his conviction was based on DNA and cell phone evidence, as well as accomplice testimony.

New counsel was appointed for Armstrong in September, with a hearing on the motion for summary disposition set for November. In October, counsel moved to continue the hearing so that several witnesses could be located, interviewed, and asked to sign affidavits. Counsel also filed a motion for a private investigator at State expense to assist in locating and interviewing those witnesses. The court granted the motion to continue but set the motion for an investigator for hearing. The State resisted the motion, arguing it did "not set forth sufficient information demonstrating a reasonable need for the sought court-funded investigative services." The State added the alleged "inmate's identity and whereabouts" were known and, because there was "no asserted impediment preventing postconviction counsel from communicating directly with that individual, the grant of State-funded investigative services" was "premature and unnecessary."

The court adopted the State's reasoning and denied Armstrong's motion for a private investigator. But the court did provide that "[i]n the event that counsel's contact with the inmate leads to a sworn statement from the inmate that could demonstrate more specifically the need for further investigation or development of material evidence," Armstrong could renew his request. In a later motion to continue the summary disposition hearing, Armstrong's attorney asserted she was "still trying to locate" witnesses to obtain affidavits but was experiencing "difficulty ascertaining current contact information for the witnesses." Counsel also asserted her contact with Armstrong had been limited because of COVID-19.

The district court granted the motion to continue and moved the hearing to May 2021. The day before the hearing, Armstrong's attorney filed a resistance to the State's motion for summary disposition. The resistance, which was unsupported by affidavits or other evidence, reiterated the alleged statements from a fellow inmate "that the witnesses have expressed their desire to recant their testimony as it relates to" Armstrong. Based on this "newly-discovered evidence," Armstrong claimed he was "actually innocent" within the meaning of *Schmidt v. State*, 909 N.W.2d 778 (Iowa 2018) and excepted from the statute of limitations.

At the hearing, the State argued that because the record was limited to Armstrong's self-serving allegations, he "present[ed] nothing for the Court to even allow him to move forward at this point." Armstrong responded by arguing that the State was flipping the burden applicable to summary disposition motions. Assuming without deciding "that Armstrong has put forward newly discovered evidence to avoid the time-bar dismissal of [section] 822.3," the court found that his unsupported claim of actual innocence did not give rise to a genuine issue of material fact under section 822.6. The court accordingly granted the State's motion for summary disposition. Appealing that decision, Armstrong claims the court abused its discretion in denying his motion for an investigator at State expense, summary disposition was inappropriate, and postconviction counsel rendered ineffective assistance.

## II.     Standards of Review

We review the district court's denial of a motion for appointment of an investigator at State expense for abuse of discretion, the same we would of a denial of a motion for an expert at State expense. *State v. Tate*, No. 16-1929,

2017 WL 4049512, at *1 (Iowa Ct. App. Sept. 13, 2017). We review summary disposition rulings in postconviction proceedings for legal error. *Linn v. State*, 929 N.W.2d 717. 729 (Iowa 2019). Claims of ineffective assistance of postconviction counsel are reviewed de novo. *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018).

## III. Analysis

### A. Appointment of Investigator

We begin with Armstrong's challenge to the court's denial of his motion for an investigator at State expense. Offering little specifics, Armstrong only submits that "[a] private investigator would have provided [him] an opportunity to offer evidence vital to the material issue in the case," and the services were necessary because his counsel was unable to locate any witnesses.

An indigent party is not entitled to "services at state expense unless there is a finding that the services are necessary in the interest of justice." *State v. Leutfaimany*, 585 N.W.2d 200, 208 (Iowa 1998). A reasonable need must be demonstrated, and courts are discouraged from authorizing State funds when the indigent party "merely seeks to embark on a random fishing expedition." *Id.* In order to prevent "this sort of evidentiary exploration," courts are required "to independently review facts asserted by counsel and grant the application if those facts 'reasonably suggest further exploration *may* prove beneficial to defendant in the development of his or her defense.'" *State v. Dahl*, 874 N.W.2d 348, 352 (Iowa 2016) (citation omitted).

Here, the record shows Armstrong knew the identity and location of the "fellow inmate"[2] who told him that "all purported witnesses to . . . Armstrong's alleged crimes" were ready to recant. Noting that fact in denying Armstrong's motion, the district court implicitly determined an investigator was unnecessary to procure what the inmate had to offer. We agree.

Armstrong goes on to submit an investigator was nevertheless necessary to "obtain affidavits from 'undiscoverable witnesses.'" But these witnesses were not undiscoverable since, based on Armstrong's own allegations, they were known by the fellow inmate, who was known to Armstrong. If the inmate gave Armstrong information that needed further investigation, the court left the door open for Armstrong to renew his request. Thus, even though the State should only object to appointment of a private investigator for an indigent party in "rare circumstances," *id.* at 353, with this set of facts we are unable to conclude the district court abused its discretion in denying Armstrong's motion.

**B.  Summary Disposition**

We next examine Armstrong's claim that the court erred in granting summary disposition. Though Armstrong acknowledges that he "did not provide any evidence to resist the State's motion," he claims that should not have resulted

---

[2] Armstrong seems to dispute this point on appeal even though his amended postconviction application stated that "a fellow inmate approached Mr. Armstrong unsolicited and told him" about the recanting witnesses. During some changes in court-appointed counsel, Armstrong filed a pro se motion with the court requesting "travel documents" for a certain inmate. The State assumed the inmate named in Armstrong's motion was the fellow inmate referred to in his amended postconviction application and provided Armstrong with that inmate's location.

in entry of summary disposition because the State did not meet its burden to show the non-existence of any genuine issue of material fact.

"The standards for summary judgment in postconviction relief actions are analogous to summary judgment in civil proceedings." *Castro v. State*, 795 N.W.2d 789, 793 (Iowa 2011). "To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law." *Griglione v. Martin*, 525 N.W.2d 810, 813 (Iowa 1994), *overruled on other grounds by Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 448 (Iowa 2016). The moving party can meet that burden by relying "on admissions in the pleadings, affidavits, or depositions, answers to interrogatories, and admissions on file." *Id.* (internal citation omitted); *accord* Iowa R. Civ. P. 1.981(3). "A moving party cannot shift the burden to the other party through a conclusory motion for summary judgment not supported by undisputed facts." *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 819 (Iowa 2019) (Appel, J., dissenting). "When the evidentiary matter tendered in support of the motion does not affirmatively establish uncontroverted facts that sustain the moving party's right to judgment, summary judgment must be denied even if no opposing evidentiary matter is presented." *Griglione*, 525 N.W.2d at 813.

It is this latter point Armstrong hangs his hat on. He argues the State "failed to produce any evidence" to dispute his claim "that a fellow inmate informed him that witnesses wished to recant their testimony." According to Armstrong, "[a]s the record stands currently, it is impossible to ascertain which inmate informed Armstrong of the recantation, nor can one ascertain who expressed their desire to

recant their testimony." "The procedural consequence of this summary disposition," Armstrong continues, deprived him "of a meaningful opportunity to develop a record in open court and assigned a heightened burden beyond which the State Legislature intended." We disagree.

We first note that the State's motion was properly supported. As required by Iowa Rule of Civil Procedure 1.981(8), a statement of undisputed facts was attached to the State's motion with specific reference to those parts of the pleadings, depositions, and underlying criminal transcript "support[ing] such contentions," along with a memorandum of authorities. The focus of the State's motion, and the undisputed facts in support of it, was that Armstrong's claim of victim recantation was not plausible given the evidence presented at trial. The State pointed out that because none of the victims of the home invasion ever identified Armstrong as one of their assailants, there was nothing for them to "recant." Instead, Armstrong's conviction was based on testimony from one of his accomplices, which was corroborated by DNA and cell phone evidence placing Armstrong at the scene of the crime. Yet at the hearing on the motion, Armstrong countered that "there's a difference between witnesses not being able to identify a particular individual versus affirmatively stating that an individual did not commit the crime."

The problem is that because the State's motion was properly supported, Armstrong could "not rest upon the mere allegations or denials in the pleadings," Iowa R. Civ. P. 1.981(5), though that is exactly what he did. *See Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005) ("Speculation is not sufficient to generate a genuine issue of fact."). As the district court found:

Armstrong has presented only second-hand hearsay from an unnamed fellow inmate who claimed to know that all of the witnesses to the home invasion crime no longer believed Armstrong was involved in the crime. Neither Armstrong nor his unnamed source has provided an affidavit. None of the crime victims, whose identities are set out in the trial information, provided affidavits. The record is devoid of an affidavit from either of the accomplices.

Armstrong suggests this lack of evidence was because his motion for a private investigator at State expense was denied.[3] But that doesn't explain Armstrong's failure to file even his own affidavit setting out the basis for his claim in more detail. *See Feeback v. Swift Pork Co.*, No. 20-1467, 2022 WL 951097, at *5 n.8 (Iowa Ct. App. Mar. 30, 2022) (noting that even self-serving affidavits "may be evidence for the trier of fact to believe or disbelieve"), *application for further review granted* (June 28, 2022). "Summary judgment is not a dress rehearsal or practice run; 'it is the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Slaughter*, 925 N.W.2d at 808 (alteration in original) (citation omitted). Because Armstrong did not "set forth specific facts showing the existence of a genuine issue for trial" in response to the State's properly supported motion, *Hlubeck*, 701 N.W.2d at 95, we affirm the grant of summary disposition.

## C.  Ineffective Assistance of Postconviction Counsel

In a final effort to save his application from summary disposition, Armstrong asserts postconviction counsel was ineffective in failing to investigate his actual-

---

[3] We recognize that in *Linn*, 929 N.W.2d at 753, our supreme court found the "failure to appoint an expert cannot be cited as a basis for summary judgment [in a postconviction action] when the court erroneously denied the appointment of such an expert." But in *Linn*, unlike here, the facts supporting the applicant's need for an expert were apparent from the underlying trial record. *See* 929 N.W.2d at 721–27.

innocence claim and procure witnesses in support of it. Because we have no idea what measures counsel took, the record is inadequate for us to address the claim. So it would have to be made in a separate postconviction-relief application. *See Goode*, 920 N.W.2d at 526–27.

## IV. Conclusion

We affirm the summary disposition of Armstrong's postconviction-relief application.

**AFFIRMED.**